591 So.2d 814 (1991)
BECHTEL CORPORATION and Industrial Indemnity Company
v.
Junior W. PHILLIPS.
No. 90-CC-0217.
Supreme Court of Mississippi.
December 4, 1991.
*815 Terry B. Germany, Markow Walker Reeves & Anderson, Jackson, for appellants.
Harry J. Rosenthal, Albert Dickens, Jackson, for appellee.
En Banc.

ON PETITION FOR REHEARING
HAWKINS, Presiding Justice for the Court:
The original decision affirming this case is withdrawn. The petition for rehearing of the employer Bechtel Corporation (Bechtel) and carrier Industrial Indemnity Company, the appellants herein, is granted and the cause is reversed and judgment rendered for the appellants.

FACTS
Junior W. Phillips on September 29, 1987, filed a motion to controvert with the Mississippi Workers' Compensation Commission (Commission), claiming he suffered a back injury in the early morning of October 2, 1986, while employed with Bechtel. There is no conflict but that Phillips either sustained a back injury or an acute manifestation of a back problem on that date. Rather, the question is whether he sustained any injury on the job that day, as he claimed before the Commission.
Phillips' family physician is Robert A. Dale, M.D., in general practice in Hazlehurst, who Phillips started seeing in 1980.
On October 2, 1986, Phillips went to Dr. Dale complaining of low back pain. Following an examination, Dr. Dale referred Phillips to Walter Shelton, M.D., an orthopedic surgeon in Jackson. Dr. Dale's notes did not reflect any history being given by Phillips of receiving an injury on the job. He testified that he tried to get a history of work-related injuries, but on some days because he was alone seeing 40 to 60 patients, he did not get a history.
Dr. Dale was never asked, and never gave a medical opinion that Phillips' back problem was work related.
Dr. Shelton testified that he saw Phillips on October 15. He testified from his office notes:
At the time he was having back and left leg pain. Stated that he worked as a pipe fitter at Grand Gulf, and he bent over two weeks prior to this getting out of the bathtub and had sudden severe onset of back pain radiating to the left foot.
Asked if Phillips had ever related a history of having injured his back while working as a pipe fitter at Bechtel, Dr. Shelton replied: "Let me see. (Reviews file). No, he did not." The only history of an injury Dr. Shelton obtained was that Phillips hurt his back getting out of the bathtub.
Because Dr. Shelton concluded Phillips had a neurological deficit, he referred him to Glen C. Warren, M.D., engaged in neurological surgery in Jackson.
Dr. Warren saw Phillips on November 10, 1986. He testified:
I saw him initially on the 10th day of November, and he related that on the 2nd of October the same year, he had bent forward at home, felt a pop in his leg and then began to experience left hip and leg pain that extended down into his calf, describing some numbness on the outside of his left foot.
.....

*816 Denied ever having had that type of problem before.
This history was given Dr. Warren at the River Oaks Hospital on November 10. He was further asked:
Q. Yes, sir. From the history that you just stated, if I caught it correctly, I believe the injury derived from something that happened at his home; is that correct?
A. That was the history he gave me, yes, sir.
.....
Q. Doctor, could you tell me whether or not your diagnosis was consistent with the history of the injury as related to you by the claimant and by his prior doctors?
A. Yes, that's a very common history, that is, bending and feeling popping in your back. And that occurs with or without lifting. You don't necessarily have to do any lifting in order to have this occur. So this is probably the most common story that we have in someone who ruptures a disc in his back.
A myelogram was performed, and surgery performed on a herniated disc in the degenerative stage at the L5, S1 level on November 12.
None of the doctors filed claims for medical services with the Commission, although all were familiar with the procedure for making claims for such services.
Louie F. Wilkins, Jr., M.D., engaged in general medicine and surgery in Hazlehurst, saw Phillips on November 25, 1986, for the purpose of making a social security disability evaluation. He took a detailed history and made a detailed examination. The report begins:
Mr. Phillips comes in complaining of back problems. He states that he was doing well until sometime in early October, when after taking a shower, he stepped out of the shower, bent over, and his back popped. The pain started immediately in his back and radiated down the left leg. He was in severe pain and was taken to a local doctor in Hazlehurst, who treated him and had him stay in bed for about ten days.
Under diagnosis, the report states: "This patient is status post surgery for herniated lumbar disc on the left."
None of these treating and examining physicians ever testified that in his opinion Phillips had sustained a work-related injury of any kind. As noted, if they testified at all as to its etiology, the onset began with Phillips getting out of the tub at his home.
Phillips, who was born August 8, 1929, had other physical problems as well. He was a heavy smoker and was overweight. He had both pulmonary and some heart problems. He also had a chronic skin rash.
Phillips filed a motion to controvert in September 29, 1987. The administrative law judge conducted a hearing on August 24, 1988.
Phillips went through the seventh grade in school. He spent several months in the Air Force in 1951 and was discharged because of a suspected residual tubercular problem. He went through several years as an apprentice plumber and engaged in the pipe fitter trade. He began work for Bechtel at the Grand Gulf plant August 28, 1986, commuting 75 miles to work each day.
On the late night shift, around 4:30 a.m. on October 2, 1986, he testified:
Now my back kind of popped. I was lifting some pipe and tool stuff up on the scaffold. And the way I had to hold the stuff, pull it up, swing it over a rail, when I did my back kind of popped and there was a burning went down this left hip.
He told a fellow worker he had hurt his back. He nursed it for the rest of the shift, then took Anacin and drove home. He was not feeling well, and did not eat any breakfast, but went to bed. That afternoon he got out of bed, went to the shower, and while drying off was hurting so bad he called his wife to help him back to bed. She called for an appointment with Dr. Dale who saw him around 5:00 o'clock that afternoon.
*817 Mrs. Phillips telephoned the time keeper at the plant, notifying him that her husband would be unable to go to work.
Phillips testified that he believed he told Dr. Dale that he hurt his back while working. He did not recall giving Dr. Shelton any history, only that Dr. Dale and Dr. Shelton conversed about his condition.
On cross-examination he testified:
Q. Do you recall relating  now you testified about taking a shower on the afternoon of October the 2nd, 1986. Do you recall relating anything to Dr. Shelton when you went to see him the first time about the shower and getting out of the shower?
A. I don't know if I did. They've got it confused as to the way I said it because the pain and all, when I bent over and the popping, it was at Bechtel. But now I did get in the shower. I got out of the tub and was drying off. And I found that I couldn't go any further. And that's when I called my wife to assist me to get around and get back to the bed and get some medical help.
He testified that he thought he had told both Drs. Dale and Shelton that he got hurt bending over, and there was a pop and burning sensation, but it was at the job. It was not in the tub. He testified that the physicians' recollection of what he told them "and the true story is not the same."
Mrs. Joy Phillips testified that when her husband came home from work the morning of October 2, he told her that he had hurt his back. She got him two Anacins and he went to bed. That afternoon following his taking a shower, Mrs. Phillips, from the kitchen, heard him "hollering." She ran to him, saw him with one hand on his hip and holding the wall with the other. He was in obvious physical distress and she had to help him back to bed. She thereafter took him to Dr. Dale.
Following his surgery Phillips applied for and received unemployment compensation benefits. He never reported any work-related injury to his employer. The first notice to the employer of any work-related injury was the motion to controvert filed with the Commission.
The administrative law judge found that Phillips had received a back injury while on the job, and awarded benefits. This was affirmed by the full Commission and thereafter by the circuit court of Claiborne County which affirmed the award.
The employer and carrier appealed.

LAW
On appeal, this cause was initially affirmed per curiam. On Bechtel's and Industrial Indemnity's petition for rehearing, we find we erred.
This case is made difficult because there is no question but that Phillips has indeed suffered from a ruptured disc in his lower back.
The diagnosis in this case of Phillips manifestly requires medical testimony as to its existence and ordinarily would require expert medical testimony as to its etiology. "Cases involving the issue of causal connection from the physical standpoint usually turn upon medical opinion and proof." Dunn, § 273 (3rd ed. 1982), and cases cited.
No doctor testified that in his professional opinion Phillips received this injury on the job. Medical proof abounds as to Phillips's condition, but it was also incumbent upon him as claimant to prove by expert medical evidence that this condition was in some way work related.
Not only did no doctor testify that in his professional opinion Phillips's condition was work related, his counsel did not even ask this vital, yet elementary question. "The claimant has the burden of showing causal connections between the accident or work activity and the disability claimed as a result." Dunn, § 268, and cases cited.
Factual findings of the Commission are binding upon this Court, of course, provided they are based upon substantial evidence. Dunn, § 272, and cases cited. We simply cannot hold as credible or substantial, in context of this case, Phillips's testimony that he was injured on the job. *818 No fellow worker corroborated it, no doctor corroborated it.
We find incredible and unbelievable that the doctors who took notes of Phillips's history got "confused," as he testified, when they gave as the precipitating factor of his back trouble his getting out of the tub or shower in his home.
If Phillips's back problem began on the job as he testified, with a sharp excruciating pain, why did he not go see his family doctor that morning? When it hit him that afternoon getting out of the tub, he and his wife wasted no time getting to Dr. Dale's office.[1]
Phillips did not do one act consistent with a work-related injury from October 2, 1986, the day he claimed he was hurt, until almost one year later when he filed a motion to controvert.
He did not report a work related injury to his employer. He knew enough to seek vocational and social security disability benefits, but he sought no workers' compensation benefits during this period. The history each doctor reported supported vocational or social security disability benefits, but no workers' compensation benefits. The medical history a patient gives his doctor might not be binding upon other parties, but it most certainly should be binding upon him in the absence of unusual and compelling circumstances.
The elastic credulity which we must give factual findings of the Commission in this case has been stretched beyond its limit. Therefore, we reverse and render judgment for the employer and carrier.
THE PETITION FOR REHEARING IS GRANTED; REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PITTMAN and BANKS, JJ., concur.
PRATHER, J., dissents with written opinion joined by ROBERTSON, SULLIVAN and McRAE, JJ.
PRATHER, Justice, dissenting:
Respectfully I dissent to the majority opinion asserting that this Court should not be the factfinder in this case which presents a conflict in testimony.
On October 2, 1986, Junior Phillips testified that while working the night shift as a pipefitter for the Bechtel Corporation on the Grand Gulf Nuclear Power Plant project in Port Gibson, he attempted to pull some pipes and tools up onto a scaffold with a rope. Phillips bent over a rail to do so. While pulling up the pipes and tools Phillips felt his back pop and a burning sensation went down his left hip and leg. The injury occurred at about 4:30 a.m. Phillips informed his co-worker that he had hurt his back and that he would not be doing very much for the rest of the shift. He did not file any kind of report of the injury with his supervisor.
After his shift ended and he had checked all of his equipment and tools for radiation, Phillips, obviously not thinking that his injury was a serious one, took two Anacin for the pain in his back and began the two hour drive back to his home in Hazlehurst. Upon arriving home, Phillips told his wife that he was not feeling well and that his back was hurting. He took two more Anacin and went to bed. He slept up until 3:00 p.m., around the time he needed to get up and get ready to go back to work. Phillips got up and went to get a shower. After he got out of the shower and while drying off, Phillips realized he could not go to work because of the pain in his back. He called to his wife from the kitchen to help him get back to bed.
Phillips visited his family doctor, Dr. Robert Dale, that same afternoon. Phillips *819 thinks he mentioned to Dr. Dale that he might have injured himself on the job. Dr. Dale referred Phillips to Dr. Walter Shelton. Phillips did not tell Dr. Shelton about injuring himself at work, because he thought that he had talked to Dr. Dale. Dr. Shelton diagnosed the problem as a herniated disc. Dr. Shelton referred Phillips to Dr. Glen Warren, who operated on Phillips' back. Even after surgery, Phillips continued to suffer pain in his back and numbness in his legs, so he began to see Dr. Louie F. Wilkins, Jr. No mention was made to either Dr. Warren or Dr. Wilkins about the injury occurring at work.
Phillips was terminated by Bechtel on October 7, 1986. He had difficulty obtaining a job because of his health. Phillips then filed a "Petition to Controvert" with the Mississippi Worker's Compensation Commission against Bechtel and its insurance carrier, Industrial Indemnity Company, asserting that he injured his back while lifting a pipe with a rope.
The testimony of Phillips and his wife were heard by an administrative judge. The depositions from Dr. Dale, Dr. Shelton, Dr. Warren and Dr. Wilkins were also accepted as evidence. Dr. Dale stated in his deposition that Phillips may have related to him that he hurt his back while working at Bechtel, but he had no record of it in his notes. Dr. Shelton stated in his deposition that Phillips did not relate to him that he had injured his back while working. Dr. Warren's records did not reflect how Phillips had injured his back. He also stated that no forms were filed with the Workers Compensation Commission. Dr. Wilkins indicated in his deposition that Phillips never told him that his back problems were caused by an injury suffered at work.
The administrative judge considered this evidence and found, among other things, that Phillips "suffered a compensable accidental injury to his lower back while performing the duties of his employment on October 2, 1986."
Bechtel and Industrial Indemnity Company appealed the order of the administrative judge to the Full Commission. The Commission, after considering the arguments of the parties and examining the record, affirmed the findings of the administrative judge. Appeal was then made to the Circuit Court of Claiborne County. The Circuit Court, considering its standard of review, affirmed the findings.
Bechtel and Industrial Indemnity Company now appeal to this Court raising the issue of whether the finding of the administrative judge, affirmed by the Full Commission and the Circuit Court, that Junior W. Phillips sustained a compensable injury in the course of employment is supported by substantial evidence.
This Court has a limited scope of review in worker's compensation cases, as it may only consider whether there is substantial evidence to support the findings of the Worker's Compensation Commission. The findings of the Commission will be reversed by an appellate court only if the findings are clearly erroneous and contrary to the weight of the overwhelming evidence. Morris v. Lansdell's Frame Co., 547 So.2d 782, 784 (Miss. 1989), quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss. 1988); compare Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437 (Miss. 1985). If the findings are supported by substantial evidence, then they are beyond the power of this Court to disturb.
Morris lays out what may constitute substantial evidence, when it states:
The commission, within legal limits, is the sole judge of the weight and sufficiency of the evidence. Evidence which is not contradicted by positive testimony or circumstances, and which is not inherently improbable, incredible, or unreasonable, cannot, as a matter of law, be arbitrarily or capriciously discredited, disregarded or rejected, even though the witness is a party or interested; and unless uncontradicted evidence is shown to be untrustworthy, it is to be taken as conclusive and binding on the triers of facts. Dunn § 271.
Morris, 547 So.2d at 785.
The issue of credibility is the prerogative of the trier of fact. Holmes v. International Paper Co., 559 So.2d 970, 976 (La. *820 1990). However, the trier of fact should accept as true the uncontradicted testimony of a witness where the record shows no sound reason to reject the testimony. Absent contradiction of the testimony or a showing that the testimony is so internally implausible or inconsistent on its face that a reasonable trier of fact would not credit it, a finding of fact based on the trier of fact's decision to believe the testimony can virtually never be clearly wrong or manifestly erroneous. Duncan v. State Department of Transportation and Development, 556 So.2d 881, 886 (La. 1990).
Phillips stated that the injury occurred while lifting tools and pipe with a rope at work. He felt a pop in his back and a burning feeling in his legs. Some ten hours later, while at home, he became unable to move without discomfort and pain. He states clearly that this occurred while he was leaving the shower. The doctor's visit occurred the day after his last work day. Bechtel and its insurance carrier argue that Phillips' injury really occurred not while he was at work, but while he was at home, leaving the shower. They argue that this fact, along with the fact that none of the doctors were told, or had record, of Phillips being injured at work contradicts the testimony that Phillips injured himself at work.
The trier of fact chose to believe Phillips. His testimony was not shown to be improbable, incredible, unreasonable, or untrustworthy by the depositions of the doctors. The testimony could not simply be disregarded as untrue by the trier of fact. Phillips could have injured himself initially at work and not realized how serious the injury was until he was leaving the shower and could not move. No evidence was presented to contradict what Phillips said happened, or to show it as being implausible. Bechtel simply focused all of its attention on the fact that Phillips did not decide to seek medical attention until he got home. No evidence of Phillips' malingering is indicated by the record.
This is not enough to establish that the findings of the trier of fact were erroneous and not supported by substantial evidence. The testimony of Phillips was sufficient evidence in the record to support the finding that he initially injured himself at work.
The finding of the Workers' Compensation Commission is beyond the power of this Court to disturb. Respectfully, I dissent based upon the law of this state that the Commission is the factfinder of disputed testimony and of credibility of the witnesses.
ROBERTSON, SULLIVAN, and McRAE, JJ., join this opinion.
NOTES
[1] There are two possibilities: either that Phillips's acute back problem arose on the job as he described or at home. To any person who has either suffered or been closely associated with someone who has suffered such a back spasm, if this attack had occurred on the job, it is extremely unlikely Phillips would have gotten out of bed that afternoon. And, if he had, the excruciating pain he described would have hit him long before he walked to the bathroom and completed a shower.