COLEMAN, Justice,
dissenting:
¶ 45. I join Chief Justice Waller’s dissent. I write separately because, regardless of coverage issues, no competent evidence exists anywhere in the record upon which any tribunal could rely to reach a valid finding that Harper’s stroke resulted from his work. Therefore, the Workers’ Compensation Commission award was not supported by substantial evidence.
¶ 46. In workers’ compensation cases, we limit our review to determining whether the Commission’s decision “was supported by substantial evidence, was arbitrary and/or capricious, was beyond the Commission’s authority to make, or whether a claimant’s constitutional or statutory rights were violated.” Ladner v. Zachry Constr., 130 So.3d 1085, 1088 (Miss.2014). Harper’s dependents bore the burden of proving a causal connection between his stroke and his work. Bracey v. Packard Elec. Div., Gen. Motors Co., 476 So.2d 28, 29 (Miss.1985). See also Miss.Code Ann. §§ 71-3-3 and -7 (Rev.2011); V. Dunn, Mississippi Workers’ Compensation § 265 (3d ed.1982); Strickland v. M.H. McMath Gin, Inc., 457 So.2d 925, 928 (Miss.1984).
A claimant’s proof on the issue of causal connection must rise above mere speculation or possibility, as “where the medical testimony is that it could have been one way just as well as the other.” Dunn, Mississippi Workmen’s Compensation § 273 (2d ed.1978) (footnote omitted). See also Southern Brick & Tile v. Clark, 247 So.2d 692 (Miss.1971). Likewise, once the burden of proof shifts to the employer, the same degree of proof is required in order to rebut the claimant’s prima facie case. It is not enough to merely state that causation is possible but that there is insufficient evidence available upon which a medical conclusion could be based.
Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 15 (Miss.1994). Although Rule 2.8 of the Rules of the Workers’ Compensation Commission states that, for Commission purposes, the general rules of evidence are relaxed, evidence still must be “competent” to be considered. Expert medical evidence is required to prove causation. Bechtel Corp. v. Phillips, 591 So.2d 814, 817 (Miss.1991).
¶ 47. In Sonford Products Corp. v. Freels, 495 So.2d 468 (Miss.1986), overruled on other grounds by Bickham v. *1169 Department of Mental Health, 592 So.2d 96 (Miss.1991), the issue was whether the workers’ compensation claimant’s exposure to toxic chemicals caused his lung cancer and subsequent death. Freels, 495 So.2d at 471. The Freels Court wrote, “In all cases in which the causal connection would not be obvious to the untrained layman, the claimant must prove the causal connection between the alleged injury and the alleged disability by competent medical proof.” Id. In holding that Dr. Anthony J. Verlangieri, a toxicologist, was competent to give expert causation testimony, the Freels Court cited and relied upon Pros-ser, Law of Torts § 41(4th ed.1971), for the following proposition:
Causation is a fact. It is a matter of what has in fact occurred. A cause is a necessary antecedent: in a very real and practical sense, the term embraces all things which have so far contributed to the result that without them it would not have occurred.
[[Image here]]
The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the [exposure to the chemical] was a substantial factor in bringing about the result.... Where the conclusion is not one within the common knowledge of laymen, expert testimony may provide a sufficient basis for it.
Freels, 495 So.2d at 472-473. The factors that cause a stroke cannot be considered to be within the common knowledge of a layman. While the Rules of Evidence may be relaxed for purposes of workers’ compensation hearings, proof still must be competent. As the Freels Court wrote, competent expert medical testimony must be provided to prove causation, and competent expert medical testimony is that which “affords a reasonable basis for the conclusion that it is more likely than not” that the claimant’s work “was a substantial factor in bringing about the result.” Id.
¶ 48. In short, the evidence before the Commission is devoid of any expert testimony that affords the necessary reasonable basis for the Commission to have concluded “that it is more likely than not” that Harper’s work caused his stroke and death. During the hearing before the administrative judge, Dr. Marvin Jeter, Harper’s treating physician, testified that he first began treating Harper in January 1995 for hypertension. Dr. Jeter treated Harper’s hypertension with medication, and Harper responded favorably. Dr. Jet-er considered his hypertension to be well-controlled when he took the medication as prescribed. However, Harper often was noncompliant. When Harper asked what he could do in lieu of taking medication, Dr. Jeter informed him that changes in his diet and exercise regime also could aid in controlling his hypertension. At no time did Dr. Jeter encourage Harper to alter his job duties. He did testify that Harper reported that he was under stress at his job. Dr. Jeter testified that stress does tend to increase a person’s blood pressure. Dr. Jeter admitted that he was not aware of what Harper’s blood pressure was at the time of his death because he last saw Harper in 2000 after his first stroke. Dr. Jeter testified that it was possible that Harper’s uncontrolled blood pressure could have caused his fatal stroke. He also testified that stress could have been a factor in Harper’s death.
¶ 49. On cross-examination, Dr. Jeter testified that he could not state to a reasonable degree of medical probability that Harper was under stress due to his job or that Harper’s death was caused by his job.
Q. But, in fact, you cannot state to a reasonable degree of medical probability that Milton Harper was under stress due to his job on July 8th, 2001, can you?
A. Not on July the 8th, 2001.
*1170 Q. And—
A. Because he—
Q. And you cannot state to a reasonable degree of medical certainty or probability that Mr. Harper’s death was caused by his job at any point?
A. As I’ve stated before, the only thing you can say is that stress has an effect on increasing high blood pressure, and high blood pressure can contribute to a stroke. Now, those are basic facts.
Q. Okay. We are talking specifically here about Mr. Harper. You cannot say to a reasonable degree of medical probability that Mr. Harper’s -job contributed to or caused his death?
A. No. It’s a possibility.
Q. In fact, you have used that term a lot, it is just a possibility. That is all you can testify about?
A. Sure.
The Harpers offered no other testimony to establish that Harper’s death was a result of his employment. With all respect to the majority, speculative testimony such as exists in the instant case does not amount to an unequivocal causal linking, (Maj. Op. at ¶ 27), and while the majority makes a nonspecific reference to other expert testimony, it identifies none that meets the requisite standard for competence set out above. Because the Harpers’ evidence falls well short of the level of competent, they fail to establish a prima facie showing of causation. No reasonable basis exists for the Commission’s award. Accordingly, I respectfully dissent.
WALLER, C.J., AND CHANDLER, J., JOIN THIS OPINION.