Workmen's compensation benefits were awarded Ashmore (appellee) concerning internal injuries received by him in 1971 while he was loading a heavy tractor onto a lowboy. His injuries caused internal bleeding, and the administrative judge awarded him only three days' compensation. On review *Page 533 
the entire Commission granted him medical benefits from October 8, 1971, through May 5, 1972, and compensation for temporary total disability at $40 per week from October 9, 1971, through May 5, 1972. The employer and carrier appealed from the award which the Circuit Court of Harrison County affirmed. We affirm.
 I.
Was there substantial evidence to support the Commission's finding that the benefits awarded the claimant-appellee were causally related to the October 8 injury? Claimant's testimony shows that as he loaded heavy machinery he was thrown forward into the steering clutches, which struck him in the stomach and "popped" him back against the seat of the tractor. On impact he felt a "pop inside" and a burning sensation; within a few minutes he was dizzy, nauseated and vomiting blood. He stated that he had no pain or discomfort prior to the injury nor any vomiting of blood, but that after being taken directly home, he vomited blood twice more and then immediately went to the hospital. The circumstances and testimony of witnesses who saw him at the time of the accident leave no real room for questioning causal connection as concerns the lay testimony. Appellants base much of their argument upon the following statement from the claimant's physician, Dr. Wesson, when questioned about causal connection:
 Q. Now Dr. Wesson, getting back to the accident that Mr. Ashmore described to you when you took his history. Would you state whether or not, in your opinion, this accident could have either directly or indirectly aggravated his condition causing the hemorrhaging and the subsequent surgery?
 BY MR. BRYANT:
 We would object to that question in the form it's in.
 A. I think that recognizing, first of all, that the man had a proven history of having had an ulcer and that recognizing that he did have recurrent ulcer disease that trauma, which he states he had and which was apparently witnessed that the trauma could have either directly or indirectly led to the hemorrhage that he had resulting in the hospitalization. (Emphasis added).
Appellant claims (1) that the answer speaks only of the original hospitalization, and (2) that the underlined language "could have" speaks only to possibility rather than probability. Careful reading of Dr. Wesson's testimony shows that his answer was not limited to causal connection to the first hospitalization alone. We find no merit in appellants' contention number one in this respect.
Objection of the appellants that the language "could have" speaks only to possibility rather than probability merits discussion because our rule is that medical testimony, to sufficiently support causation, must be more than mere conjecture. Pertinent to this aspect of the present case is the following excerpt from 3 A. Larson, The Law of Workmen'sCompensation, § 80.32 (1976):
 The distinction between probability and possibility should not follow too slavishly the witnesses' choice of words, as sometimes happens in respect to medical testimony. A doctor's use of such words as "might," "could," "likely," "possible," and "may have," particularly when coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events corroborating the opinion, is in most states sufficient to sustain an award. It is a common experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is, the more tentative and qualified are his statements on the witness stand. . . .
 . . . . .
 The compensation process is not a game of "say the magic word," in which the rights of injured workers should stand or fall on whether a witness happens to choose a form of words prescribed by court or legislature. What counts is the real substance of what the witness intended to convey. . . .
 *Page 534 
From the whole of the doctor's testimony, what is the real substance he stated concerning causal connection? From his deposition we perceive that he relied upon the claimant's statement that he had vomited blood and the tarry stool primarily for his diagnosis of upper GI bleeding. Claimant's hemoglobin was a normal 14.8, and no ulcer showed on the X ray. According to Dr. Wesson, there is nothing unusual when an ulcer in this situation is not made apparent from an X ray. The claimant did not vomit during the hospital stay and, in the doctor's opinion, was not bleeding at the time of his dismissal from the hospital. Dr. Wesson stated that it is not unusual for an ulcer patient to have intermittent bleeding such as this. However, no physical indication (such as a bruise) would indicate on first examination that the claimant had been jarred. During claimant's two days at home, his wife stated, he had total bed rest. On the 13th, claimant became very nauseated, and, while his wife had gone to call the doctor, he began vomiting blood again and was readmitted to the hospital. When counsel asked:
 Q. Why was he readmitted, doctor? Was it a continuation of the same symptoms?
 BY MR. BRYANT:
 We object to leading the witness.
 A. He continued to have tarry stools, but primarily weakness was the reason he came back to the hospital . . . primarily just progressive and increasing weakness and dizziness, and he did have tarry stools.
The most significant factor in reexamination on second admission was a low hemoglobin — 6.6 — half of what it had been two days before, "indicating he had lost a considerable amount of blood since the previous laboratory tests were done."
 Q. Well, he had continued bleeding during this time from October 8 until the time when this other test was done?
 A. He was having tarry stools, which indicates that he was bleeding.
 Q. What treatment did you perform for Mr. Ashmore on this second hospitalization?
 A. Well, we felt that since he had stopped on the initial hospitalization that he might stop again, as patients frequently do. He was started on really conservative therapy, plus he was given several blood transfusions. However, his problem was that he would bleed sporadically. He'd bleed for a day or two and then he'd stop, and we'd think that we were sort of ahead of the situation, and it was not until 10/25/71 that the decision was made to proceed with surgery.
Claimant Ashmore stated that in his previous troubles with an ulcer in 1967 and 1971 (the 1971 troubles resulting in surgery), he had never had any bleeding from that ulcer.
In view of the fact that there had been absolutely no history of bleeding prior to the trauma experienced by the claimant, despite the fact that his physician discharged him believing the bleeding had stopped, the medical evidence upon reexamination clearly showed it had not (the tarry stools and low hemoglobin). Even though the doctor used the language "could have," the totality of his testimony indicates that he intended to convey the following thesis: Claimant was admitted with a bleeding ulcer; it is not unusual for an ulcer once bleeding to intermittently bleed; he released claimant from his first hospitalization thinking that the bleeding had stopped, but in two days, upon reexamination, tarry stools and low hemoglobin indicated he had been mistaken. Such expert testimony of the doctor, plus the corroborating evidence, constitutes substantial evidence to support the Commission's finding. This is not the first case in which this Court upheld an award of compensation where it was contended that trauma aggravated a preexisting ulcer. Such a case was New Orleans Furniture Mfg. Co. v.Martin, 190 So.2d 863 (Miss. 1966), and there the claimant's doctor testified it was "possible that the back injury aggravated the ulcer and certainly precipitated it." *Page 535 
 II.
After the main hearing of the matter concluded, there was offered and introduced into the record an affidavit of claimant's doctor (Wesson). We think this was improper but harmless error, for several reasons: (1) It, as counsel conceded, changes nothing which was in his deposition already in evidence, but merely restated his interpretation of the claimant's condition; (2) after the affidavit went in, the employer made no effort to respond to or impeach the affidavit or to recross-examine Dr. Wesson; and (3) earlier the doctor was in fact cross-examined. We do not hold that trials may be conducted upon ex parte affidavits, but in this instance the error was not shown to have prejudiced the appellant.
In conclusion we point out that under Mississippi Code Annotated § 71-3-55 (1972), the Commission "shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure. . . ." Furthermore, we have long adhered to the rule that a broad and liberal construction shall be accorded the Workmen's Compensation Law in order to accomplish the legislative purpose. This is a close case, but we cannot say that the decision appealed from is contrary to the law or not supported by substantial evidence which the Commission had the right to accept.
AFFIRMED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, LEE and BOWLING, JJ., concur.