394 So.2d 1380 (1981)
SPERRY-VICKERS, INC. and Liberty Mutual Insurance Company
v.
Walter Ray HONEA.
No. 52582.
Supreme Court of Mississippi.
March 18, 1981.
*1381 Dan McCullen, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellants.
Donald C. Woods, Danny E. Cupit, Cupit & Maxey, Jackson, for appellee.
Before ROBERTSON, P.J., and BROOM and HAWKINS, JJ.
BROOM, Justice, for the Court:
Workmen's compensation benefits for pulmonary fibrosis lung disease were awarded claimant Walter Ray Honea. His employer, Sperry-Vickers, Inc. (Vickers herein) and Liberty Mutual Insurance Company appeal contending that (1) the evidence submitted by claimant fails to establish that he suffered an occupational disease or accidental injury, (2) the medical opinion submitted in behalf of claimant by Dr. A.W. Conerly in response to a hypothetical question was erroneous, (3) the claimant was erroneously awarded medical expenses because he sought medical expenses from his group insurance carrier without requesting it from the employer, and (4) penalties were erroneously imposed by the commission. We affirm except as to penalties.
Honea was employed at Vickers from July 1966 through April 1977 as a test stand operator and for three months as a test maintenance troubleshooter. His primary duty as a test stand operator was to examine hydraulic components, i.e., valves, motors and pumps for leaks, pressure flow, and output. The fluids were circulated through the hydraulic components. Some of the hydraulic fluids used were Red Oil  NIL 5606A, Skydrol 500, Aerosafe 2300, and DET 24 and 26. Units were cleaned with Stoddard Shop Solvent, trichloroethylene (used until 1971), and ether. Honea noted that when he arrived at work in the morning, the plant was clear, but within a few minutes after starting up the machines, a gray mist permeated the air. He stated that Skydrol caused him to cough, burned his eyes, nose and throat, and gave off an odor. Both the Skydrol and the Aerosafe caused a burning sensation to his skin.
On March 7, 1977, Honea entered Hinds General Hospital suffering from what was later to be diagnosed as pulmonary fibrosis (scarring of lung tissue). While in the hospital, Bobby Hudson, supervisor at Vickers for the test maintenance department, visited Honea who remained hospitalized for three weeks. He returned to work at Vickers after his release from the hospital in April 1977 but remained at his job only three days before he had to terminate his employment. Honea was only 37 years old in 1977.
At the administrative hearing, Honea gave a detailed history of his past health problems and work experience. As a child, he suffered from recurring asthma attacks although these attacks subsided after he had his tonsils removed in 1947. Only on one other occasion, while serving in the army, did he have an asthma attack, and asthma is admittedly not a factor as to the pulmonary fibrosis here. He did, however, have repeated cold and flu-like symptoms which caused him to miss several days of work at a time. The only job in which his working environment was likely to produce or aggravate his medical condition was at Vickers. He also stated that he had never smoked. Before working at Vickers, he had *1382 worked as a delivery man and salesman. He was never around any dust-producing industry, i.e., farming, sugar cane, grain, aluminum, coal, asbestos, or sandblasting, and had never lived near factories that produced smoke or gaseous fumes. Several months prior to his March 1977 illness, he began to experience debilitating symptoms which became more advanced after the illness. He now has extreme shortness of breath and can only do light housework. Taking out the garbage now requires a major physical effort.
Medical testimony will be reviewed in discussing the issues.
DID HONEA PROVE THAT HE HAD SUFFERED AN OCCUPATIONAL DISEASE AS A RESULT OF HIS EMPLOYMENT WITH VICKERS? Relying upon Flintkote Co. v. Jackson, 192 So.2d 395 (Miss. 1966), appellants Vickers and Liberty Mutual argue that the record contains no credible testimony to support the conclusion of the administrative judge (AJ), commission, and circuit court. It is true that as held in Flintkote, the claimant has the burden of establishing his claim beyond speculation and conjecture. In Flintkote, benefits were denied the claimant because he failed to meet his burden of proof, but the facts here are quite different from those in Flintkote. Dr. Albert W. Conerly, with the Division of Pulmonary Medicine of the Department of Internal Medicine at the University of Mississippi Medical Center in Jackson, testified that he could not give a specific agent that was fibrosis-producing in Honea's lungs. He concluded:
Many disease processes have very definitive appearances, but in pulmonary fibrosis there are many  anything that we put into the idiopathic category means that we have not demonstrated a specific histological appearances [sic] nor a specific agent.
On further examination by appellant's attorney, Mr. McCullen, Dr. Conerly noted that two of the chemical agents Honea was exposed to while at Vickers had the potential of causing pulmonary fibrosis. The appellants concluded their questioning of Dr. Conerly with the following:
Q. Doctor, he says assume that he has excluded all other causes. You can't as a medical doctor assume that all causes have been excluded because you don't know all causes, do you?
A. No, sir. My answer was based purely on the hypothetical question.
Q. And the degree of exposure for one of those chemicals to create this condition would require a chronic exposure over a long period of time in a concentrated amount of the element in the atmosphere, wouldn't it?
A. I can answer affirmatively on some points. The only point that I can't give you a specific answer on in that question is that we don't know on any of this occupational business. In any specific person the ability of a substance to cause a problem is unknown. It may be very low or it may be very high but regardless of what this threshold is in this single person and for this single agent, regardless of whether it takes a little bit or a whole lot or half way in between it does take repeated exposures and, of course, this generally is when you say a long period of time, very rarely is it less than months and it's usually in terms of years.
Q. And it's at a high concentration normally, isn't it?
A. Again, it's hard for me to give you a specific answer on that because there are people who do not require high concentrations, but threshold limit values, as established in OSHA, are based on the fact that the large portion of the population will require high concentrations.
Q. Well, we can't state then based on reasonable medical probability that there is a causal relationship between his condition and his working environment over an exposure during a reasonably definite period of time, can we?

*1383 A. I really can't state that because I don't know what causes it to begin with.
It is to be noted that although Dr. Conerly testified that there was no specific causal agent of fibrosis, he stated that some chemical agents affect some people differently from others. He also testified that asthma does not cause pulmonary fibrosis. Conerly concluded that it was difficult to determine if Honea had had any adverse reaction to a particular chemical, years or months after such exposure, since chemicals do not leave any particulate matter in the lungs.
In his order, the AJ discussed Conerly's deposition:
In this said deposition, Dr. Conerly causally connected the claimant's pulmonary fibrosis to the claimant's employment with Sperry-Vickers. Dr. Conerly further testified that the pulmonary function studies performed in May of 1977 revealed characteristic patterns of restrictive process with some evident terminal air-flow limitation which indicated small airway obstruction. The claimant's forced vital capacity was 62 percent of the predicted norm and the stated lung volumes reflected the loss of volumes in all compartments of the lungs. He stated that oxygen transfer was approximately 44.7 percent of the predicted and that the claimant was noted to have a positive bronchodilator response indicating a reversible component of a small airway with obstructive disease.
Given the nature of the chemical agents, Dr. Conerly bridged the causal gap as follows:
The man has fibrosis and the man has been exposed to agents which are known to cause fibrosis and from a medical standpoint I can assume a relationship but I cannot prove without any question of a doubt that any of these agents actually did it.
Dr. Jessie L. Wofford, a general and chest surgeon, also testified as to Honea's condition. In a written report dated February 15, 1979, Wofford concluded that Honea did not sustain any lung injury as a result of his working at Vickers. On cross examination, however, Wofford admitted that this report was written prior to reviewing Honea's hospital records. He also stated that the "life span of a person with active pulmonary fibrosis is substantially shortened."
The AJ succinctly summarized Wofford's testimony:
Dr. Wofford next saw the claimant on January 29, 1979, at the request of the Honorable Dan McCullen, attorney for the employer and carrier. On the appointment of January 29, 1979, Dr. Wofford performed a physical examination on the claimant and also examined hospital and doctors' records from Hinds General Hospital. On that date he also sent the claimant to a radiology group for x-rays. Upon this examination, Dr. Wofford testified that the claimant had no other lung problems than asthma. It was further Dr. Wofford's opinion that the interstitial pulmonary fibrosis found in claimant's lungs was not related to the asthma but that he thinks it was caused by a viral infection. He stated that the causes of pulmonary fibrosis are unknown. It was his opinion that the problem at work would have shown itself within six weeks instead of six years. Dr. Wofford said that he could not relate the pulmonary fibrosis which the claimant had exhibited to any of the chemicals to which the claimant had been exposed.
On cross-examination, Dr. Wofford testified that pulmonary fibrosis is incurable and that a lung biopsy had shown the pulmonary fibrosis to be in an acute state. Also on cross-examination, Dr. Wofford stated that hydrocarbons can cause pulmonary fibrosis in some instances.
After hearing and reviewing all the medical testimony, the AJ carefully analyzed the testimony and made his award.
Despite the fact that the medical testimony did not specifically isolate a single cause of the pulmonary fibrosis, claimant Honea did present all possible testimony to connect *1384 his working environment as the cause of his disease. As noted by Dr. Conerly, the chemical agents Honea was exposed to while on the job at Vickers and not elsewhere could have caused the disease. We think the proof was sufficient to support the findings and order entered below.
We find no merit to the argument that the claimant's hypothetical question propounded to Dr. Conerly is ground for reversal.
IS CLAIMANT ENTITLED TO RECOVER HIS MEDICAL EXPENSES EVEN THOUGH HE PROCESSED HIS MEDICAL EXPENSES THROUGH HIS GROUP INSURANCE CARRIER? As noted by appellants, claimant went to his own private family physician and did not request his employer to send him to a company doctor. At the time he became ill in March 1977, Honea believed his condition not to be job-related. Vickers, however, was aware of Honea's illness: Bobby Hudson, Honea's supervisor, had visited him in the hospital.
In Central Electric & Machinery Co. v. Shelton, 220 So.2d 320, 323 (Miss. 1969), claimant signed a written statement in connection with a group insurance policy stating that his injury was not work-connected. This Court held that the signing of such a document is not a bar per se to a claim under workmen's compensation. Claimant did not believe it was possible for him to reap any benefits under the Workmen's Compensation Act and therefore asserted that his claim was not work-connected. The facts in the case presently before this Court are distinguishable from those cited by either appellant or appellee. Honea was not aware at the time of his illness that he had pulmonary fibrosis. It was only after his discharge from the hospital that his attending physician, Dr. Patterson, concluded that he had a post-viral small airways disease. It was only after he had been hospitalized on at least three other occasions that Dr. Patterson and the consulting physician decided that he had a reversible obstructive airway disease or asthma and pulmonary interstitial fibrosis. While it is undisputed that Honea sought medical treatment on his own initiative, appellants have failed to show that such treatment would have differed it Vickers had provided the initial medical coverage. Mississippi Code Annotated § 71-3-15(1) (1972) disallows any claim for medical or surgical treatment unless the treating physician notifies the employer and the commission of a need for such treatment. In our particular case, however, Bobby Hudson was aware of Honea's illness although he was not on notice that it was an occupational disease. Section 71-3-15(1) also provides that the commission may "excuse the failure to furnish such report ... when it finds it to be in the interest of justice to do so, and may, upon application by a party in interest, make an award for the reasonable value of such medical or surgical treatment so obtained by the employee."
Appellants cite Ingalls Shipbuilding Corp. v. Byrd, 215 Miss. 234, 60 So.2d 645 (1952) as authority that the commission should have disallowed recovery of medical expenses because such services were not requested from Ingalls. In Ingalls, this Court amended the complainant's award by eliminating the items of medical and hospital bills because he had failed to request that these services be furnished by appellant Ingalls. Speed Mechanical, Inc. v. Taylor, 342 So.2d 317, 319 (Miss. 1977) cited Ingalls for the proposition that we could not amend the statute or excuse non-compliance with prerequisite conditions imposed by the legislature. In Speed, at 320, we noted that there were not latent or unknown aspects to Taylor's injury. Taylor had received serious mouth injuries more than two years prior to filing for workmen's compensation benefits under the statute. Struthers Wells-Gulfport, Inc. v. Bradford, 304 So.2d 645, 649 (1974) held that the statutory claim period runs from the time that a compensable injury becomes apparent. Justice Inzer noted in Struthers that "Mrs. Bradford had no compensable injury resulting from the spider bite until it became reasonably apparent that she had a disability arising therefrom."
As in Bradford, it was only after several bouts of debilitating symptoms that Honea's *1385 doctors became aware of the seriousness of his disease. Honea and his doctors used reasonable care and diligence to determine the true nature of his disease. We conclude that under the exception as outlined in Bradford, and in the statutory proviso in Mississippi Code Annotated § 71-3-15(1) (1972), the AJ's award as to medical bills should be affirmed.
DID THE COMMISSION AND COURT BELOW ERR IN IMPOSING PENALTIES? Mississippi Code Annotated § 71-3-37(5) (1972) provides:
(5) If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subdivision (2) of this section, there shall be added to such unpaid installment an amount equal to ten per centum (10%) thereof, which shall be paid at the same time as, but in addition to, such installment unless notice is filed under subdivision (4) of this section, or unless such nonpayment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.
The particular facts in this case, however, do not warrant the penalty award dating from the March 1977 illness. Weyerhaeuser Company v. Ratliff, 197 So.2d 231, 234 (Miss. 1967).
Upon the facts here, the penalty award dating from March 7, 1977, cannot be upheld. It would be blatantly unfair to allow the claimant to receive reimbursement for medical expenses commencing from the date of his illness when his claim was filed more than eight months after his initial hospitalization and also to back-date the penalty award to March 1977. No penalty award of 10%, therefore, should be assessed against appellant on the payment due from March 7, 1977, to November 16, 1977. A penalty award, however, should be assessed against appellants from November 16, 1977, the date Honea filed his motion to controvert because appellants did not respond to Honea's claim for more than three months after the claim was filed, § 71-3-37, supra.
Except for the award of penalties, which we limit here in accordance with the preceding paragraph, we hold that affirmance by the circuit court of the award granted by the commission was without reversible error. Upon the record as made below, we are unwilling to place upon the claimant the insurmountable burden of requiring him to isolate and pinpoint to a scientific certainty a specific chemical agent or agents which caused his illness because to do so would defeat the beneficent purposes of the Workmen's Compensation Act.
AFFIRMED AS TO DISABILITY BENEFITS AWARDED; REVERSED AS TO PENALTIES FROM MARCH 7, 1977, TO NOVEMBER 16, 1977, AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and HAWKINS, JJ., concur.