908 So.2d 175 (2005)
FRITO-LAY, INC. and Continental Casualty Company (CNA Insurance Companies), Appellants
v.
James LEATHERWOOD, Appellee.
No. 2004-WC-01223-COA.
Court of Appeals of Mississippi.
July 26, 2005.
*176 Dennis W. Voge, Tupelo, attorney for appellants.
B. Sean Akins, Ripley, attorney for appellee.
Before BRIDGES, P.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. James Leatherwood, a delivery truck driver for Frito-Lay, injured his back in August of 1999 after performing yard work. He visited two doctors, including a neurosurgeon, who concluded that Leatherwood had a ruptured disc in his lower back. His neurosurgeon eventually recommended surgery. Although he was in pain, he continued to work.
¶ 2. On December 13, 1999, Leatherwood was making a delivery when he slipped from his truck and fell three times. He made an appointment with his neurosurgeon, but he did not tell his neurosurgeon *177 about the accident. Leatherwood underwent the surgery; following the surgery, he was unable to work. Because Leatherwood did not inform his doctor of the fall, it was the neurosurgeon's opinion that his inability to work was precipitated by the yard work. All doctors who evaluated Leatherwood opined that he was totally and permanently disabled.
¶ 3. Leatherwood filed an application for workers' compensation benefits, which Frito-Lay denied. Leatherwood filed a petition to controvert. The administrative law judge denied Leatherwood's application for benefits, finding that Leatherwood did not prove through medical evidence that the fall from his truck was a contributing factor to his disability. The Full Commission reversed and awarded benefits to Leatherwood, and the circuit court judge affirmed the judgment of the Full Commission. Frito-Lay appeals, raising the following issue:
WHETHER THE DECISION OF THE WORKERS' COMPENSATION COMMISSION AWARDING BENEFITS TO LEATHERWOOD WAS SUPPORTED BY SUBSTANTIAL EVIDENCE
¶ 4. Finding no error, we affirm.

FACTS
¶ 5. James Leatherwood was employed by Frito-Lay beginning in 1989 as a route salesman. His responsibilities included driving a delivery truck to a central distribution point each morning, loading his truck with boxes of snack products, driving his truck to stores across northwest Mississippi, and delivering the snacks at each location.
¶ 6. Leatherwood had suffered prior injuries in 1991 and 1994 and received workers' compensation benefits for each of those injuries. The 1991 claim was for an injury to his lower back. The 1994 injury was sustained when a customer stabbed him while making a delivery.
¶ 7. On July 27, 1999, Leatherwood paid a visit to Dr. Praven Patel, his family physician. He complained that he had hurt his back while pulling a lawnmower out of a ditch at home. He also reported that he had twisted an ankle while engaged in the same activity. Leatherwood returned to Dr. Patel on July 31, reporting that his back was not much better. Dr. Patel provided medication and placed Leatherwood on light duty.
¶ 8. In August, 1999, Leatherwood was on a delivery unloading cases of dip when he felt a pull in the right side of his back. He continued to work for the rest of the day and went home to perform yard work. He noted that he felt pain while mowing his yard. Leatherwood reported his injury to Mike Sellers, his supervisor, who filed an accident report.
¶ 9. Sellers testified that he saw Leatherwood at least once a week from August of 1999 to early December 1999 and observed that Leatherwood appeared to be hurting as he walked because he was stooped over and had a limp. Sellers also testified that Leatherwood often needed assistance from other workers in order to do his job and wore a back support for his injuries from August through December of 1999. Sellers testified that Leatherwood was not as effective an employee as he was before August of 1999.
¶ 10. On August 11, 1999, Leatherwood reported to Dr. Patel, who referred him to Dr. Craig Clark, a neurosurgeon. Based on Dr. Clark's initial evaluation, it was his opinion that Leatherwood suffered a lumbar strain with spasm. Dr. Clark prescribed medication and ordered Leatherwood to stay off work, but Leatherwood continued to work in spite of the doctor's orders.
*178 ¶ 11. Leatherwood returned to Dr. Clark on September 8, 1999, where Dr. Clark ordered an MRI of the lumbar spine. Leatherwood was told to remain off work. Leatherwood returned to Dr. Clark on September 20, when Leatherwood was diagnosed with a far lateral intra-foraminal disc rupture on his lower back. Leatherwood told Dr. Clark that he wished to continue to work. Dr. Clark consented and ordered Leatherwood to undergo physical therapy at the end of each work day. Dr. Clark was of the opinion that due to the nature of Leatherwood's injuries, they would exert significant symptoms. Dr. Clark discussed the possibility of surgery with Leatherwood at the September 20 visit, although Dr. Clark wanted to avoid performing surgery if possible. Dr. Clark decided to continue Leatherwood on physical therapy in an effort to avoid surgery.
¶ 12. Leatherwood returned to Dr. Clark on November 18, 1999. Dr. Clark was informed that Leatherwood did not undergo physical therapy because his insurance company refused to pay for it. Dr. Clark was convinced that Leatherwood's medical condition was getting worse, and recommended surgery to Leatherwood. Leatherwood advised Dr. Clark that he needed to continue working and that he would be unable to schedule surgery until the first of the year. Leatherwood scheduled an appointment to see Dr. Clark again after the first of the year.
¶ 13. During the time that Leatherwood was under Dr. Clark's care, he also made frequent appointments with Dr. Patel, who prescribed pain medication for Leatherwood. Leatherwood saw Dr. Patel on August 28, who prescribed medication for him. Leatherwood advised Dr. Patel that Dr. Clark had taken him off work until an MRI could be completed. Leatherwood returned to Dr. Patel on October 12. Dr. Patel noted that Leatherwood's condition had not changed, and Leatherwood reported to Dr. Patel that Dr. Clark had recommended surgery to him. He returned to Dr. Patel on November 8, with his medical condition essentially unchanged. Leatherwood did not miss a day of work from July of 1999 to December 13, 1999. On December 13, 1999, Leatherwood made a visit to the Piggly-Wiggly supermarket in Sardis to make a delivery, in rainy weather. Leatherwood was walking out of the back of his truck while carrying several cases of dip when his foot slipped on the truck's wet steps. Leatherwood dropped four feet onto the rear of his truck and landed on his tailbone. The momentum from the fall carried him forward, and he dropped another two feet and landed on his backside on the truck's bumper before landing on the ground.
¶ 14. Frito-Lay initially denied that Leatherwood suffered a fall on December 13, 1999. On appeal, however, there is no dispute that Leatherwood fell. Two eyewitnesses testified about this accident. Leatherwood's description of his fall at the Piggly-Wiggly parking lot was corroborated by the testimony of Dallas Thomas, a store employee, and Roger Stevens, who was in the store to buy meat. Thomas added that Leatherwood was in tears and bent over, holding his lower back, when he came into the store after the fall.
¶ 15. Leatherwood visited Dr. Clark on the day he fell. When he called to schedule an appointment, he told the nurse he had suffered a fall. He did not, however, tell Dr. Clark that he had been injured that day. Dr. Clark noted that Leatherwood's symptoms were significantly worse than his previous visit in November, 1999, but he assumed that Leatherwood's condition was not caused by any accident. Dr. Clark testified that it was his opinion that Leatherwood's medical condition was related *179 to the incident in which he pulled his lawn mower out of a ditch.
¶ 16. On December 21, 1999, Dr. Clark performed disc surgery on Leatherwood. The surgery performed was the same procedure that Dr. Clark recommended in November. After this surgery, complications set in and another surgery was performed on February 17, 2000. Leatherwood also continued to see Dr. Patel on a regular basis, although he never advised Dr. Patel that he had sustained an injury at work. It was also Dr. Patel's opinion that Leatherwood's injuries were related to Leatherwood's pulling a lawn mower out of a ditch. Leatherwood received follow-up care from Dr. Clark through April 4, 2000. He did not return for any additional care with Dr. Clark after that date and never told Dr. Clark about his accident at work during any of his visits. All doctors who evaluated Leatherwood after his fall agreed that Leatherwood was totally and permanently disabled.
¶ 17. Leatherwood applied for workers' compensation benefits, which Frito-Lay denied. Leatherwood filed a petition to controvert. The administrative judge dismissed the petition based on Dr. Clark's testimony because Dr. Clark was not informed about the fall on December 13, 1999. The administrative judge found that Leatherwood had failed to show by a preponderance of the evidence each of the essential three elements of a workers' compensation claim: (1) an accidental injury; (2) arising out of and in the course of his employment; and (3) a causal connection between the accidental injury and the claimed disability. See, e.g., Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss. 1994). The judge reasoned that "there is no expert testimony tending to prove beyond mere possibility that any fall which may have occurred on December 13, 1999 was a contributing factor toward the need for that surgery." The judge held that Leatherwood did not prove, by a reasonable medical probability, that his fall contributed to his inability to work.
¶ 18. Leatherwood appealed the administrative law judge's decision to the Full Commission, which reversed the decision of the administrative judge. The Commission found that Leatherwood's injury in August of 1999 was not disabling. It further found that Leatherwood's accident on the December 13, 1999, caused a significant worsening of his back condition which caused him to be disabled from work. The Full Commission reasoned that sufficient medical evidence was presented when Dr. Clark noted that Leatherwood's condition was "markedly worse" and "clinically markedly different" on December 13, 1999. The Commission determined that Leatherwood was permanently and totally disabled and awarded benefits. The Panola County Circuit Court affirmed the Commission's findings.

ANALYSIS

Standard of Review
¶ 19. The claimant has the initial burden of proof to show by a preponderance of the evidence that he suffered an accidental injury arising out of and in the course of employment. Id. at 12. Once the claimant makes a prima facie case of disability, the burden of proof shifts to the employer. Id. A pre-existing disease or infirmity does not prevent an injury from "arising out of employment" if the work-related injury aggravated, accelerated, or combined with a disease to produce a disability. Hale v. Fluor Daniel Corp., 830 So.2d 1252, 1254(¶ 7) (Miss.Ct.App.2002).
¶ 20. The Mississippi Worker's Compensation Commission is the ultimate fact-finder. Accordingly, the Commission may accept or reject an administrative *180 judge's findings. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss. 1994). This Court will affirm the Commission's findings of fact if they are supported by substantial evidence. Id. In other words, "[t]his Court will reverse an order of the Workers' Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence." Id. (citations omitted). Doubtful claims should be resolved in favor of compensation, so as to fulfill the beneficial purposes of statutory law. Sharpe v. Choctaw Electronics Enterprises, 767 So.2d 1002, 1006 (¶ 19) (Miss.2000) (citations omitted).
¶ 21. Unless common knowledge suffices, medical evidence must prove not only the existence of a disability but also its causal connection to the employment. Howard Industries, Inc. v. Robinson, 846 So.2d 245, 259(¶ 49) (Miss.Ct.App.2002) (citing Bradley & Thompson, Workers' Compensation Law, § 76:53, 9 Ency. Miss. Law, at 182-84). As with any fact-finder, the Commission is entitled to rely upon the evidence and reasonable inferences. United Methodist Senior Services v. Ice, 749 So.2d 1227, 1232(¶ 19) (Miss.Ct.App.1999).
WHETHER THE DECISION OF THE WORKERS' COMPENSATION COMMISSION AWARDING BENEFITS TO LEATHERWOOD WAS SUPPORTED BY SUBSTANTIAL EVIDENCE
¶ 22. The evidence shows that Leatherwood's initial injury in July of 1999 was not disabling. Although Leatherwood had a pre-existing ruptured disc in his lower back, the original MRI suggested that the rupture was mild. Leatherwood was able to work before his accident and did not miss any work prior to December 13, 1999. Leatherwood insisted on continuing to work before December 13, 1999, even though he was in severe pain. Leatherwood had received workers' compensation benefits on two prior occasions, and he quickly returned to work each time. Only after December 13, 1999, did Leatherwood demand surgery and take time off work.
¶ 23. The nature of the fall Leatherwood sustained also supports the finding that his injuries were work-related. Two eyewitnesses verified that Leatherwood slipped, fell directly on his tailbone, fell a second time onto the bumper of his truck, and fell a third time onto the ground. Dr. Clark and Dr. Patel learned about Leatherwood's injury only after having been deposed, and they never knew the details of Leatherwood's injury. Dr. Clark did not seek additional medical information on December 13, 1999. If Leatherwood had informed Dr. Clark of his injuries on that day, Dr. Clark could have performed another MRI to document the specific change of Leatherwood's physical condition. Because Dr. Clark and Dr. Patel were unaware of the fall, their medical opinions are necessarily limited.
¶ 24. A claimant does not have to prove with absolute medical certainty that his work-related injuries were the cause of his disability. "Even though the testimony may be somewhat ambiguous, as to causal connection, all that is necessary is that the medical findings support a causal connection." Sperry-Vickers, Inc. v. Honea, 394 So.2d 1380, 1385 (Miss.1981). The medical evidence is sufficient if it supports, even if it does not fully prove, a finding of disability. The Mississippi Supreme Court has held that "disability need not be proved by medical testimony as long as there is medical testimony which will support a finding of disability." Hall of Mississippi, Inc. v. Green, 467 So.2d 935, 938 (Miss.1985).
¶ 25. No doctor ever excluded the fall on December 13, 1999, as a causal factor to *181 Leatherwood's disability. Dr. Clark stated that Leatherwood's condition on December 13 was consistent with an individual who had recently suffered a fall, although he admitted that his condition could have been due to other causes. Although Dr. Clark stated that he did not know why Leatherwood's condition had deteriorated, he did state that Leatherwood was "clinically markedly different" when he saw Leatherwood on December 13. Dr. Clark also stated that Leatherwood was "much worse on the 13th than he was on November 18." Finally, Dr. Clark mentioned that Leatherwood was "bent over at the waist and had physically a lot more going on than he had at the prior visit." Leatherwood presented substantial medical evidence showing that his fall on December 13, 1999, was the cause of his disability.
¶ 26. Frito-Lay cites Bechtel Corp. v. Phillips, 591 So.2d 814 (Miss.1991), for the proposition that an employee who fails to report an injury to his treating physicians is barred from receiving workers' compensation benefits. However, in Bechtel, the claimant's alleged work-related accident was uncorroborated. Id. at 816. In the present case, two witnesses corroborated the details of Leatherwood's fall. In addition, the claimant in Bechtel waited an entire year after his alleged injury before telling his employer or filing a claim for workers' compensation benefits. Id. at 818. In the present case, Leatherwood called his supervisor immediately, and he was placed on a workers' compensation leave of absence on December 19, 1999. Finally, in Bechtel the doctors were not asked, in any way, whether the claimant's condition was related to a work-related injury. In the present case, the Commission was presented with medical testimony showing that his condition on December 13, 1999, was consistent with somebody who had suffered a fall. For these reasons, we find that substantial evidence exists to uphold the Commission's decision to award benefits.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.