# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-WC-00266-COA

**COOPER TIRE & RUBBER COMPANY**                                        **APPELLANT**

**v.**

**RONDIE LOVELESS**                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/2020 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | M. REED MARTZ |
| ATTORNEY FOR APPELLEE: | GREG E. BEARD |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 02/23/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     Rondie Loveless was diagnosed with a stress fracture in her right foot while she was employed by Cooper Tire & Rubber Company.  Cooper Tire denied that the injury was work-related and therefore denied workers' compensation benefits.  An administrative judge (AJ) found that the injury was work-related, that Loveless had sustained a 100% industrial loss of use of her right leg, and that she was entitled to temporary total and permanent partial disability benefits.  The Workers' Compensation Commission affirmed the AJ's decision.  On appeal, Cooper Tire challenges the Commission's finding that Loveless's injury was work-related.  However, because there is substantial evidence to support the Commission's finding, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.   In 2003, Rondie Loveless began working as a tire builder at Cooper Tire's plant in Tupelo.  In 2004, Loveless injured her neck, requiring fusion surgery and resulting in a permanent restriction on pushing, pulling, or lifting more than 20 pounds.[1]  As a result of Loveless's neck injury, Cooper Tire reassigned her to the dye-mixing laboratory.  Her job in the lab involved working twelve-hour shifts, and Loveless estimated that she spent up to ninety percent of those shifts on her feet.  Loveless testified that she did not engage in any strenuous activity outside of work.  Instead, she liked to lie by the pool at her house.  Loveless performed her job in the lab well.  She never received negative reports from her supervisors and received pay raises throughout her employment at Cooper Tire.

¶3.   In 2014, Loveless began experiencing severe pain in her right foot.  Loveless believed that the pain was caused by "excessive walking, standing, and all that [she] had done" working in the lab.  In contrast, Cooper Tire offered evidence that Loveless had mentioned that she had dropped a can of hairspray on her foot.[2]  Cooper Tire suggests that the hairspray

---

[1] Loveless filed a petition to controvert regarding her neck injury.  Cooper Tire admitted that the injury was compensable but denied that Loveless had suffered any loss of wage-earning capacity or permanent disability.  The Commission agreed with Cooper Tire and denied Loveless's claim for permanent partial disability benefits.  In prior proceedings before the Commission, Loveless's neck injury claim was consolidated with the claim that is the subject of this appeal.  However, the Commission's decision regarding the neck injury claim is now final and is not at issue in this appeal.

[2] A Cooper Tire employee testified that in 2014 Loveless stated that "[t]he only thing she could think of" to explain her foot pain was that "she had previously dropped a can of hairspray on [her foot]."  Cooper Tire offered a signed statement from a second employee and a transcript of a recorded interview of the employee by Cooper Tire's attorney.  That employee, who had since relocated to a Cooper Tire plant in Mexico, also stated that Loveless attributed her foot pain to the can of hairspray.

2

can could be responsible for Loveless's injury. However, Loveless denied that she ever made such a statement, and two of her coworkers testified that she had never mentioned anything about dropping a can of hairspray.

¶4.     In July 2014, Loveless sought treatment from Med Serve, but x-rays of her foot did not reveal any problems. In August 2014, Loveless saw Dr. Nels Thorderson. He gave Loveless a medical boot to wear and ordered an MRI of her foot. The MRI revealed swelling in her foot, which Thorderson believed indicated either a stress fracture or arthritis. The MRI did not reveal any evidence of bruising, which would indicate an acute trauma, such as being hit by a can of hairspray. Based on the swelling in Loveless's foot, Thorderson suspected that the pain was due to a stress fracture rather than arthritis. Loveless returned to Thorderson in September 2014, and Thorderson began a treatment plan that consisted of keeping Loveless's foot in the boot at all times, including while Loveless was sleeping.

¶5.     Cooper Tire refused to allow Loveless to wear her medical boot at work. Although Loveless believed that she could perform her duties while wearing her medical boot, Cooper Tire informed her that company policy required her to wear steel-toed boots at the plant. Loveless testified that some of her coworkers had been allowed to work while wearing medical boots but that Cooper Tire insisted she wear steel-toed boots.

¶6.     In October 2014, Thorderson concluded that the boot alone would not allow the fracture to heal. Thorderson put Loveless's foot into a cast and instructed her to stay off her feet. In November 2014, Thorderson removed the cast and returned Loveless to the boot. Although Loveless's condition had improved, Thorderson began to suspect that Loveless was

3

also experiencing arthritis. By December 2014, Loveless's pain had returned, and Thorderson's nurse practitioner put her back in a cast. Loveless continued in the cast until February 2015, when Thorderson switched her back to the boot with a plan to transition over time to a custom-made insert for her shoe. Loveless returned to Thorderson in March 2015, complaining that the pain in her foot had returned and that she was experiencing new pain in her right ankle. Thorderson did not return Loveless to the cast but did give her a steroid injection for her ankle.

¶7.    With more conservative treatment options exhausted, Thorderson recommended a surgical procedure to try to repair the stress fracture. Loveless agreed, and Thorderson performed the surgery in April 2015. Although Loveless's condition initially improved after the surgery, by August 2015 her pain had returned. She was experiencing less swelling in her foot, but she was still in pain, which Thorderson believed suggested arthritis. Steroid injections again provided some relief, but the relief was only temporary. When Thorderson informed Loveless that there was nothing additional he could do for her, she decided to seek a second opinion.

¶8.    Loveless went to Vanderbilt Medical Center in November 2015. Dr. Bethany Gallagher examined her and ordered a CT scan. Gallagher subsequently recommended surgery to repair Loveless's foot. In January 2016, Gallagher performed the operation. The surgery and post-operative treatment resulted in significant improvement of Loveless's foot pain. However, Gallagher instructed Loveless to permanently avoid walking or standing for more than four hours in a day.

¶9.    Cooper Tire denied that Loveless's injury was work-related and refused to pay workers' compensation benefits.  Loveless received short-term disability payments from Cooper Tire from August 2014 to February 2015.  In August 2015, Cooper Tire terminated Loveless's employment on the basis of absenteeism.  Loveless did not seek to return to Cooper Tire after she completed treatment for her foot.  In September 2016, Loveless began working for the United States Postal Service as a mail carrier.  She also began working for Compass Group in its catering operations at Baptist Memorial Hospital in Boonesville.  Both jobs allow Loveless to comply with her doctor's restrictions.

¶10.    Loveless filed a petition to controvert with the Workers' Compensation Commission alleging that her foot injury was work-related and compensable.  Cooper Tire denied compensability.  At a hearing before an AJ, Loveless and some of her former coworkers testified, and Thorderson's deposition was admitted into evidence.  Thorderson testified that "[a] stress fracture is a repetitive use injury" and that "[b]y definition" it is *not* caused by a "traumatic event" or "one specific event."  He did not believe that Loveless's injury was consistent with a traumatic event.  He testified that "[t]here is just no way of knowing" for sure whether the injury was acute or repetitive, but he saw no evidence that Loveless's fracture was caused by any acute or traumatic event.  Accordingly, a stress fracture was his "main diagnosis."  Thorderson was asked whether it was "possible" that long hours of standing on concrete several days a week in the lab at Cooper Tire had "contribute[d] to [her] stress fracture."  He answered, simply, "It is possible."  He then testified that all of his opinions were "based upon a reasonable degree of medical certainty."

¶11. The AJ found that Loveless's injury was a stress fracture and was not caused by a traumatic event. The AJ further found that there was "no medical or other reliable evidence indicating that Mrs. Loveless's stress fracture was caused by something other than standing on concrete for twelve-hour shifts for many years" and that it was "reasonable to believe that when she got home from work after a twelve-hour shift standing and walking on concrete, plus an hour's drive each way to and from the workplace, she was tired and spent her time at home relaxing around the house or yard." The AJ concluded that Loveless's foot injury was compensable and that Cooper Tire was obligated to pay workers' compensation benefits. Cooper Tire appealed to the Workers' Compensation Commission.

¶12. On appeal to the Commission, Cooper Tire argued that Thorderson's testimony was insufficient to support a finding of compensability. The Commission affirmed the AJ's order in relevant part,[3] finding that the medical and lay testimony was sufficient to establish causation and compensability. The Commission then remanded the case to the AJ for further proceedings. Cooper Tire appealed the Commission's decision. However, this Court dismissed the appeal for lack of a final, appealable judgment. *Cooper Tire & Rubber Co. v. Loveless*, 281 So. 3d 31, 34 (¶11) (Miss. Ct. App. 2018). We explained that the Commission's decision was interlocutory because neither the Commission nor the AJ had determined the extent of Loveless's permanent partial disability or her industrial loss of use of her right leg. *Id.* at 33 (¶10).

---

[3] The Commission reversed the AJ's decision in part and denied Loveless's claim for permanent partial disability benefits based on her 2004 neck injury, but that part of the Commission's decision is no longer at issue in this appeal. *See supra* note 1.

¶13. On remand, the AJ held an evidentiary hearing to determine the extent of Loveless's industrial loss of use of her leg. In a subsequent order, the AJ found that the stress fracture was a compensable work-related injury for the same reasons stated in her original order. In addition, the AJ found that Loveless had suffered a 100% industrial loss of use of her right leg. The AJ ordered Cooper Tire to pay Loveless temporary total disability benefits of $454.42 per week[4] from July 1, 2014, until October 5, 2016, with credit for the weeks that Cooper Tire had paid her salary as a short-term disability benefit. In addition, the AJ ordered Cooper Tire to pay Loveless permanent partial disability benefits of $454.52 per week for 175 weeks based on Loveless's 100% industrial loss of use of her leg. *See* Miss. Code Ann. § 71-3-17(c)(2) (Supp. 2019).

¶14. Cooper Tire again petitioned the full Commission for review. Cooper Tire did not challenge the AJ's finding that Loveless had suffered a 100% industrial loss of use of her right leg or any specific award of benefits. Rather, Cooper Tire argued only that Loveless failed to show that her injury was work-related. The full Commission affirmed the AJ's order, stating that the issue of compensability "was previously decided by the Commission" in its 2017 decision and was "therefore subject to the doctrine of res judicata." The Commission further stated that "if for some reason the doctrine of res judicata [was] inapplicable and the Commission re-examined the compensability issue, then the result would be the same because during the second hearing on the merits, no new evidence on the compensability issue was presented." That is, the Commission held that "the result" in the

---

[4] This was the maximum weekly benefit at the time of Loveless's injury. The parties stipulated that Loveless's average weekly wage was $1,155.68.

case was unchanged because "the facts and the law on this issue [were] unchanged since the earlier appeal." Cooper Tire appealed from the Commission's decision.

¶15. On appeal, Cooper Tire argues that Loveless failed to establish a compensable injury because there is no medical evidence of a work-related injury. Cooper Tire also argues that the Commission erred in relying on the doctrine of res judicata. Cooper Tire does not challenge the AJ's finding that Loveless has experienced a 100% industrial loss of use of her leg or any specific award of benefits.

**ANALYSIS**

¶16. In a workers' compensation appeal, "this Court will only reverse if the Commission's decision lacks the support of substantial evidence, is arbitrary or capricious, is beyond the Commission's scope or its power, or violates constitutional or statutory rights." *Sheffield v. S.J. Louis Constr. Inc.*, 285 So. 3d 614, 618 (¶8) (Miss. 2019). "In determining whether the Commission's decision is supported by substantial evidence, this Court serves only as a reviewing court and will not . . . re-weigh the evidence." *Id.* "'Substantial evidence' means more than a mere scintilla of evidence but does not rise to the level of a preponderance of the evidence." *Id.* The Commission's finding must be affirmed if the evidence provides "a substantial basis of fact from which the fact in issue can be reasonably inferred." *Id.* (quoting *Short v. Wilson Meat House LLC*, 36 So. 3d 1247, 1251 (¶19) (Miss. 2010)). "The arbitrary and capricious standard overlaps with the substantial evidence standard in that, if the Commission's decision is not supported by substantial evidence, that decision is arbitrary and

8

capricious." *Id.*[5] "The deference granted the Commission by this Court's standard of review means that this Court cannot set aside a Commission's decision that is supported by substantial credible evidence, even if conflicting evidence exists and even if this Court may have found the facts otherwise if it were the trier of facts." *Sheffield*, 285 So. 3d at 618 (¶8).

## I. Substantial evidence supports the Commission's finding of compensability.

¶17. In a workers' compensation case, the claimant has the burden of proving by a preponderance of the evidence "(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the . . . claimed disability." *Hedge v. Leggett & Platt Inc.*, 641 So. 2d 9, 13 (Miss. 1994) (quoting *Hardin's Bakeries v. Dependent of Harrell*, 566 So. 2d 1261, 1264 (Miss. 1990)). "Unless common knowledge suffices, medical evidence must prove" the "causal connection" between a work-related injury and the claimant's disability. *Frito-Lay Inc. v. Leatherwood*, 908 So. 2d 175, 180 (¶21) (Miss. Ct. App. 2005). "A claimant does not have to prove with absolute medical certainty that his work-related injuries were the cause of his disability. 'Even though the testimony may be somewhat ambiguous, as to causal connection, all that is necessary is that the medical findings support a causal connection.'" *Id.* at (¶24) (quoting *Sperry-Vickers Inc. v. Honea*, 394 So. 2d 1380, 1385 (Miss. 1981)).

¶18. Cooper Tire argues that the medical evidence was insufficient to establish a causal

---

[5] Likewise, a decision that "is supported by substantial evidence cannot be arbitrary and capricious." *Titan Tire of Natchez Inc. v. Miss. Comm'n on Envtl. Quality*, 891 So. 2d 195, 201 (¶19) (Miss. 2004) (quoting *Falco Lime Inc. v. Mayor & Aldermen of City of Vicksburg*, 836 So. 2d 711, 721 (¶44) (Miss. 2002)).

9

connection between Loveless's employment and her stress fracture. For that reason, Cooper Tire argues the AJ's and the Commission's finding of a causal connection is "mere conjecture." We disagree.

¶19.    The evidence as a whole is sufficient to support the Commission's finding of a compensable injury. As discussed above, Thorderson testified that Loveless had suffered a stress fracture in her foot and that a stress fracture is a repetitive-use injury, not an injury caused by any traumatic or specific event. Loveless's work in the lab at Cooper Tire could have caused such an injury. For twelve-hour shifts, Loveless was on her feet ninety percent of the time, walking or standing on concrete floors. Thorderson testified, to a reasonable degree of medical certainty, that Loveless's work at Cooper Tire could have caused the stress fracture in her foot. In addition, Loveless testified that outside of work, she did not engage in any other repetitive-type activity that would be likely to cause such an injury. She testified that after a twelve-hour shift and a one-hour commute (each way), she spent most of her time at home just "resting." She liked to lie by her pool and sometimes "might work in [her] yard," but she did not engage in any athletic or other strenuous activities. Thus, Thorderson's testimony tended to negate Cooper Tire's theory that a hairspray can caused Loveless's injury. And Loveless's testimony tended to negate the possibility that some other repetitive activity could have caused her injury. Thorderson only testified that it was "possible" that Loveless's work caused her injury. But as stated above, even "somewhat ambiguous" medical testimony is sufficient to support a finding of compensability as long as the relevant "medical findings *support* a causal connection." *Leatherwood*, 908 So. 2d at 180 (¶24)

(emphasis added) (quoting *Honea*, 394 So. 2d at 1385). "[W]hen coupled with credible evidence of a non-medical character"—such as Loveless's own testimony about her activities and symptoms—such testimony may be sufficient to support a finding of compensability. *See Dixie Contractors Inc. v. Ashmore*, 349 So. 2d 532, 533 (Miss. 1977).

¶20.    On this issue, our Supreme Court's opinion in *Ashmore* is instructive. In *Ashmore*, the employer argued that the claimant failed to establish a causal connection between his injury at work and subsequent internal bleeding, which required hospitalization and surgery. *Id.* The claimant had been driving a tractor at work when he suddenly "was thrown forward into the steering clutches, which struck him in the stomach." *Id.* He vomited blood after the accident and subsequently was hospitalized and required surgery to address internal bleeding. *Id.* The claimant's doctor acknowledged that the claimant had a history of ulcers and "recurrent ulcer disease," but the doctor testified that the trauma the claimant experienced at work "*could have* either directly or indirectly led to the hemorrhage that he had resulting in the hospitalization." *Id.* (emphasis added). Similar to Cooper Tire, the employer in *Ashmore* argued that the doctor's "could have" testimony spoke "only to possibility rather than probability" and therefore was "mere conjecture." *Id.* However, the Commission found that the claimant's injuries were compensable, and the Supreme Court affirmed. *Id.* at 533-34. Of particular relevance here, the Supreme Court stated, "A doctor's use of such words as 'might,' 'could,' 'likely,' 'possible,' and 'may have,' particularly when coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events corroborating the opinion, is in most states sufficient to sustain an award." *Id.* at 533.

11

Likewise in this case, Thorderson's testimony that Loveless's repetitive activity at work was a "possible" cause of her injury—when coupled with evidence that a stress fracture is not caused by a traumatic or specific event (such as a dropped hairspray can) and Loveless's testimony that she did not engage in other repetitive-type or strenuous activities—is sufficient to sustain a finding of compensability.

¶21.    Similarly, in *Honea*, *supra*, a doctor testified that the claimant was exposed to agents known to cause pulmonary fibrosis while at work, but the doctor could not testify "based on reasonable medical probability" that there was a "causal relationship between [the claimant's] condition and his working environment." *Honea*, 394 So. 2d at 1382-83. The doctor could only say that the claimant's exposures at work "could have caused the disease." *Id.* at 1384. However, other testimony established that the claimant had not been engaged in any other employment in which he had been exposed to agents known to cause the disease. *Id.* at 1381-82. Despite the fact that the doctor could not testify as to a causal link between the claimant's work and injury with "reasonable medical probability," the Supreme Court held that the evidence was sufficient to support the Commission's finding of compensability. *Id.* at 1383-84. The Court reasoned that the claimant "present[ed] all possible testimony to connect his working environment as the cause of his disease," and thus "the proof was sufficient to support" the Commission's finding of a causal connection. *Id.*

¶22.    Finally, in *Segar v. Garan Inc.*, 388 So. 2d 164 (Miss. 1980), the claimant began experiencing pain and was diagnosed with carpal tunnel syndrome in her right hand after working for the employer as a seamstress for three years. *Id.* at 164-65. After she sought

12

workers' compensation benefits, her doctor opined "that it [was] *entirely possible* that" her carpal tunnel syndrome resulted from her work as a seamstress. *Id.* at 165 (emphasis added). Like Cooper Tire, the employer argued that the medical evidence was insufficient to prove compensability because it established only a possibility of a causal connection, not a probability. *Id.* However, the Supreme Court rejected the employer's argument and affirmed the Commission's finding of compensability. *Id.* at 165-66. After quoting at length from its opinion in *Ashmore*, *supra*, the Court held that the combination of "medical and lay" testimony was sufficient to support the Commission's findings. *Id.* at 165-66.

¶23.    The evidence that Loveless presented is similar to the evidence in *Ashmore*, *Honea*, and *Segar*. Thorderson opined, to a reasonable degree of medical certainty, that it was "possible" that Loveless's work at Cooper Tire caused her stress fracture. In other words, Thorderson's findings are *consistent with* and "support a causal connection," even if they do not conclusively prove or establish a connection. *Leatherwood*, 908 So. 2d at 180 (¶24) (quoting *Honea*, 394 So. 2d at 1385). In addition, Loveless supplemented Thorderson's opinion with evidence that a stress fracture is not caused by a traumatic or specific event (like a dropped hairspray can) and that she did not engage in other repetitive-type activities that would have been likely to cause a stress fracture.[6] We also note that Cooper Tire did not present any credible evidence—medical or lay—pointing to any alternative cause of Loveless's injury. "In determining whether the Commission's decision is supported by

_____

[6] Cooper Tire is correct to the extent that it argues that Thorderson's opinion *alone* would be insufficient to establish causation. However, as explained above, Loveless supplemented Thorderson's opinion with other evidence that tended to negate other possible causes. *See Ashmore*, 349 So. 2d at 533.

substantial evidence, this Court serves only as a reviewing court and will not . . . re-weigh the evidence." *Sheffield*, 285 So. 3d at 618 (¶8). Nor will we reverse just because we might have reached a different conclusion if we had been the trier of fact. *Id.* Under our deferential standard of review, the Commission's finding of a compensable injury is supported by substantial evidence and must be affirmed.

## II.    The Commission's reliance on res judicata was harmless error.

¶24.    Cooper Tire also argues that the Commission erred by holding that the doctrine of res judicata precluded re-litigation of the compensability of Loveless's injury. As discussed above, the Commission first decided the issue of compensability in 2017 in Cooper Tire's initial appeal to the Commission, and then in 2020, in Cooper Tire's second appeal, the Commission held that the "issue [was] precluded from re-litigation by the doctrine of res judicata."

¶25.    Because the Commission's 2017 order was interlocutory, Cooper Tire is correct that the Commission erred by relying on the doctrine of res judicata. Our prior opinion in this case specifically held that the Commission's 2017 order was "interlocutory" and not a "final judgment." *Loveless*, 281 So. 3d at 33 (¶10). The doctrines of res judicata and collateral estoppel only apply to *final* judgments. *See, e.g.*, *Anderson v. LaVere*, 895 So. 2d 828, 833 (¶10) (Miss. 2004) ("[R]es judicata applies only to judgments which are final . . . ."); *Anderson v. R & D Foods Inc.*, 913 So. 2d 394, 400 (¶20) (Miss. Ct. App. 2005) ("A final judgment on the merits is an elementary requirement for the application of the doctrines of res judicata and collateral estoppel."). Accordingly, res judicata is inapplicable.

14

¶26.   However, the Commission's error was harmless because the Commission also clearly stated that its decision would be the same even if res judicata did not apply. The Commission held,

> Further, if for some reason the doctrine of res judicata is not applicable and the Commission re-examined the compensability issue, then the result would be the same because during the second hearing on the merits, no new evidence on the compensability issue was presented. In other words, the facts and the law on this issue are unchanged since the earlier appeal and so is the result.

In its 2017 order, the Commission clearly explained the basis of its finding of compensability. In addition, the Commission's 2017 order "affirm[ed]" the AJ's ruling on this issue and "incorporate[d] [the AJ's] findings by reference" in relevant part. As the Commission correctly recognized, the subsequent evidentiary hearing on remand focused on the extent of Loveless's permanent partial disability, not the issue of compensability. The facts and the law had not changed. The basis of the Commission's finding is clear from its 2017 order, and for the reasons explained above, that finding is supported by substantial evidence and must be affirmed. Accordingly, the Commission's error in relying on the doctrine of res judicata—essentially, as an alternative and independent basis for its decision—is only harmless error and does not require reversal.

**CONCLUSION**

¶27.   Applying our deferential standard of review, we conclude that the Commission's finding of a compensable injury is supported by substantial evidence and must be affirmed. The Commission erred by relying on the doctrine of res judicata as an additional ground for its decision, but that error was harmless.

15

¶28.    **AFFIRMED.**

    **BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**