LEE, C.J.,
for the Court:
¶ 1. This appeal arises from the Hinds County Circuit Court’s decision reversing the Mississippi Workers’ Compensation Commission (the Commission) and finding that Milton Harper’s conduct disqualified him from receiving workers’ compensation benefits. As we find the Commission’s decision was supported by substantial evidence, we reverse the judgment of the circuit court and reinstate the decision of the Commission.
FACTS AND PROCEDURAL HISTORY
¶ 2. Harper was the managing partner and president of the accounting firm Banks, Finley, White & Company of Mississippi (Banks). He was first diagnosed with high blood pressure on January 4, 1995, by Dr. Marvin Jeter. In October 1995, Harper went to the emergency room after becoming dizzy. At that time, Dr. Jeter began prescribing him blood-pressure medication. Harper saw Dr. Jeter four times from 1995 until 1998. During that time, Harper would intermittently take his blood-pressure medication, which resulted in his blood pressure ranging from normal to elevated.
¶ 3. On August 3, 2000, Harper was rushed to the emergency room at St. Dominic Hospital. Dr. Jeter examined Harper, noted that he had not been taking his blood-pressure medication, and concluded that he had suffered a stroke. Dr. Jeter referred Harper to Dr. Salil Tuwari, a neurologist. After a series of tests, it was determined that Harper had suffered multiple small-vessel strokes in the brain.
¶ 4. After resting for two weeks, Harper returned to work, initially part-time and then to his usual full-time schedule of 8:00 a.m. until 6:30 or 7:30 p.m. However, Harper did not work as many weekends as he did prior to his stroke.
¶ 5. In the early morning of Sunday, July 8, 2001, Harper woke up to go to the restroom. When he returned, Harper’s wife, Maggie, asked him a question, and Harper responded with unintelligible noises and became nonresponsive. Harper was taken by ambulance to the University of Mississippi Medical Center, immediately put on life support in the intensive-care unit, and never regained consciousness. On July 10, 2001, Harper was taken off life support and died from the stroke he had suffered two days earlier.
¶ 6. On July 29, 2002, Maggie and her daughter, Andrea Harper, filed two petitions to controvert with the Commission, seeking workers’ compensation benefits for Harper’s strokes on August 3, 2000, and July 8, 2001. The administrative judge (AJ) found that Harper’s strokes were too proximally connected to separate and combined the cases. The AJ held a hearing that began on September 25, 2008, and concluded on November 12, 2008.
*465 ¶ 7. The AJ found Maggie and Andrea proved that Harper’s work-related stress caused his high blood pressure, which, in turn, caused his stroke on August 3, 2000, and his death on July 10, 2001. The AJ found that Maggie and Andrea proved a compensable workers’ compensation claim, and that Banks did not prove Harper had a preexisting condition to warrant denial of the claim or apportionment.
¶ 8. Banks appealed to the Commission, which heard the case on December 7, 2009. The Commission affirmed the AJ’s findings with regard to the compensability of the claim. However, the Commission held that Harper had a clearly identifiable preexisting condition that materially contributed to his death, and it apportioned the benefits by sixty-five percent. One commissioner dissented, stating that he would deny the claim because the stroke was not in any way work related.
¶ 9. Banks appealed to the Hinds County Circuit Court. The circuit court agreed that substantial evidence supported the Commission’s findings that: (1) Harper’s strokes arose out of and in the course of employment; (2) Harper was an officer of a corporation; and (3) Harper’s workers’ compensation benefits should be apportioned. But the circuit court reversed the Commission’s judgment because it found that Harper’s decision not to obtain workers’ compensation insurance disqualified him from receiving benefits that he would have otherwise been entitled to receive.
¶ 10. Harper now appeals, arguing: (1) coverage was not waived under Mississippi Code Annotated section 71-3-79 (Rev. 2011); and (2) his injury was compensable.
STANDARD OF REVIEW
¶ 11. The standard of review in a workers’ compensation case is well settled. If the findings of the Commission are supported by substantial evidence, then they are binding on this Court. Mitchell Buick, Pontiac & Equip. Co. v. Cash, 592 So.2d 978, 980 (Miss.1991). “The [Commission] sits as the ‘ultimate finder of facts’ in deciding compensation cases, and therefore, ‘its findings are subject to normal, deferential standards upon review.’ ” Pilate v. Int’l Plastics Corp., 727 So.2d 771, 774 (¶ 12) (Miss.Ct.App.1999) (quoting Natchez Equip. Co., Inc. v. Gibbs, 623 So.2d 270, 273 (Miss.1993)). “We are bound even though the ‘evidence would convince the [C]ourt otherwise if it were instead the ultimate fact[-]finder.’ We will overturn [the] Commission’s decision only when there is an error of law or an unsupportable finding of fact.” Montana’s Sea Kettle Rest. v. Jones, 766 So.2d 100, 102 (¶ 7) (Miss.Ct.App.2000) (internal citation omitted) (quoting Walker Mfg. Co. v. Butler, 740 So.2d 315, 320 (¶ 19) (Miss.Ct.App.1998)).
DISCUSSION
I. EXCLUSION OF COVERAGE
¶ 12. As president of Banks, Harper was responsible for making decisions regarding insurance. Even though Banks had at least five employees and was obligated to obtain coverage under Mississippi Code Annotated section 71-3-5 (Rev.2006), Harper erroneously determined that Banks did not have the requisite number of employees to legally mandate Banks to purchase workers’ compensation insurance. Based on that determination, Banks chose not to obtain the insurance.
¶ 13. Banks argued before the Commission that Harper could not receive workers’ compensation benefits because it was his decision not to obtain the insurance and therefore opt out of the coverage. While under section 71-3-79 an executive officer can elect to exclude himself from workers’ compensation insurance coverage, *466 this exclusion must be in writing. The Commission found that Harper could not have “elected not to be covered as an executive officer because there was no policy from which he could have otherwise excluded himself.”
¶ 14. At the circuit court level, Banks argued that it was unjust for the Commission to hold that Harper was covered for failure to opt out under section 71-3-79, because it was Harper’s decision that Banks not acquire workers’ compensation insurance. The circuit court found this argument compelling and denied Harper benefits. On appeal, Banks asserts that when Harper affirmatively elected not to procure workers’ compensation insurance for either himself or his firm, he also affirmatively elected not to be covered under the act.
¶ 15. When applying a statute, a court must determine if the language of the statute is ambiguous. If a statute is not ambiguous, the court should apply the plain meaning of the statute. City of Natchez v. Sullivan, 612 So.2d 1087, 1089 (Miss.1992). Section 71-3-79 clearly states that an “executive officer may reject [the] coverage by giving notice in writing to the carrier of this election not to be covered as an employee.” At no point did Harper reject the coverage by giving notice in writing. The Commission’s finding that Harper did not opt out of coverage is supported by substantial evidence. This issue is without merit.
II. COMPENSABLE INJURY
¶ 16. In his petition to controvert, Harper seeks death benefits under Mississippi Code Annotated section 71-3-25 (Supp.2013). For Harper’s death to be covered under Mississippi’s workers’ compensation statutes, his death must have resulted from an injury that “ar[ose] out of and in the course of employment!.]” Miss. Code Ann. § 71-3-3(b), (c) (Rev.2011). For the injury to arise out of employment, there must be “a causal connection between the employment and the injury.” Singley v. Smith, 844 So.2d 448, 453 (¶20) (Miss.2003). One is injured in the course of employment when an injury results from an activity that was actuated partly by a duty to serve the employer or was reasonably incident to the employment. Id.
¶ 17. The AJ, the Commission, and the circuit court agreed that the injury arose out of the course and scope of Harper’s employment. The Commission looked to the testimony of Dr. John Davis, a neurosurgeon who had never examined Harper, which stated that Harper’s strokes were caused by his high blood pressure. The Commission also relied on Dr. Jeter’s testimony that Harper’s significantly stressful work aggravated his high blood pressure to some degree and was a contributing cause of his death. Dr. Jeter also noted in his testimony that Harper had no other risk factors for vascular disease except high blood pressure.
¶ 18. Maggie testified that Harper was a “workaholic,” and that he was “constantly working.” She also stated that Harper kept saying that he was getting behind at work and having problems balancing being out of town for audits and trying to manage the office at the same time. Harper’s coworkers Kaiser Brown and Dian Parkinson both testified that Harper worked from 8:00 a.m. until 6:30 or 7:00 p.m. on week nights and usually worked some on the weekends. Additionally, Parkinson stated that Harper had more responsibilities than anyone else at Banks because he was the president. The Commission agreed with the AJ’s findings that the injuries arose out of the course and scope of Harper’s employment, but found that *467 Harper’s preexisting condition of high blood pressure materially contributed to his death. We find this decision was supported by substantial evidence. Because the Commission’s decision was supported by substantial evidence, we reverse the judgment of the circuit court and reinstate the Commission’s judgment, including the apportionment of benefits by sixty-five percent.
¶ 19. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND RENDERED, AND THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS REINSTATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.