# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-00811-SCT

*MILTON HARPER, DECEASED, BY AND
THROUGH HIS DEPENDENTS, MAGGIE
HARPER AND ANDREA HARPER*

*v.*

*BANKS, FINLEY, WHITE & CO. OF
MISSISSIPPI, P.C.*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/27/2011 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| TRIAL COURT ATTORNEYS: | WILLIE T. ABSTON |
| | PHILLIP ANDREW LAIRD, JR. |
| | DEBRA M. BROWN |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEY FOR APPELLANTS: | WILLIE T. ABSTON |
| ATTORNEYS FOR APPELLEE: | PHILLIP ANDREW LAIRD, JR. |
| | WILLIAM ANTHONY DAVIS, III |
| | H. THOMAS WELLS, III |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED IN PART, REVERSED IN PART, AND RENDERED IN PART. THE JUDGMENT OF THE WORKERS' COMPENSATION COMMISSION IS AFFIRMED - 07/02/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Milton Harper, the managing partner and president of Banks, Finley, White &

Company of Mississippi ("Banks"), suffered a severe stroke on August 3, 2000, and died of

another stroke on July 10, 2001.  His dependents sued Banks for workers' compensation

benefits.  The administrative law judge and the Workers' Compensation Commission held

that Harper's injuries and death arose out of the scope and course of his employment at

Banks.  On appeal, the Circuit Court of the First Judicial District of Hinds County agreed that

substantial evidence in the record supported the Commission's conclusion that Harper's

stroke arose out of his employment, but that court held that Harper's dependents were barred

from recovering workers' compensation benefits because Harper had failed to obtain

workers' compensation insurance for Banks.  In turn, the Court of Appeals in ***Harper v.

Banks, Finley, White & Co. of Mississippi***, 136 So. 3d 462, 467 (Miss. Ct. App. 2014), held

that Harper's dependents were not barred from recovery because Section 71-3-79 of the

Mississippi Code[1] allows members of partnerships to exempt themselves from workers'

---

[1]

Acceptance of a premium on a policy securing to an employee compensation, either alone or in connection with other insurance, shall estop the carrier so accepting from pleading that the employment of such employee is not covered under this chapter or that the employment is not carried on for pecuniary gain.

When any member of a partnership, firm, or association who does or does not perform manual labor, and where there is coverage of fellow employees, elects to take coverage under the provisions of this chapter, the intent of the insured as well as acceptance by the carrier shall be shown by endorsement to the policy. Any such affirmative action by the parties shall entitle said members or officers to the benefits enjoyed by an employee under this chapter. Every executive officer elected or appointed and empowered in accordance with a charter and bylaws of a corporation, other than nonprofit charitable, fraternal, cultural, or religious corporations or associations, shall be an employee of such corporation under this chapter, *provided that said executive officer may*

2

compensation coverage by giving notice in writing. *Id.* at 466. Because Harper had not opted

out of coverage in writing, the Court of Appeals held that Banks was required to provide

workers' compensation benefits to Harper's beneficiaries. *Id.* On writ of *certiorari*, we hold

that the Court of Appeals erred in applying Section 71-3-79 of the Mississippi Code to the

facts of this case. Because Banks did not have workers' compensation insurance coverage,

there was no coverage for Harper to opt out of in writing as contemplated by Section 71-3-

79. Instead, we hold that Section 71-3-5[2] of the Mississippi Code controls the analysis of this

*reject said coverage by giving notice in writing to the carrier of this election not to be covered as an employee.*

Any such executive officer of a nonprofit charitable, fraternal, cultural, or religious corporation or association may, notwithstanding any other provision of this chapter, be brought within the coverage of its insurance contract by any such corporation or association by specifically including such executive officer in such contract of insurance. The election to bring such executive officer within the coverage shall continue for the period such contract of insurance is in effect, and during such period such executive officers thus brought within the coverage of the insurance contract shall be employees of such corporation or association under this chapter.

Miss. Code Ann. § 71-3-79 (Rev. 2011) (emphasis added).

[2]

The following shall constitute employers subject to the provisions of this chapter:

   Every person, firm and private corporation, including any public service corporation but excluding, however, all nonprofit charitable, fraternal, cultural, or religious corporations or associations, that have in service five (5) or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied.
. . .
   Any employer may elect, by proper and written action of its own governing authority, to be exempt from the provisions of the Workers' Compensation Law as to its sole proprietor, its partner in a partnership or to

3

case: because Banks had more than five employees, it was required to obtain workers'

compensation insurance and provide workers' compensation benefits to its employees.

Moreover, we hold that the Workers' Compensation Commission's finding that Harper

suffered a fatal injury through the course of his employment at Banks is supported by

substantial evidence.

## FACTS AND PROCEDURAL HISTORY

¶2.     The relevant facts are adequately stated in the Court of Appeals' opinion:

> Harper was the managing partner and president of the accounting firm Banks, Finley, White & Company of Mississippi (Banks). He was first diagnosed with high blood pressure on January 4, 1995, by Dr. Marvin Jeter. In October 1995, Harper went to the emergency room after becoming dizzy. At that time, Dr. Jeter began prescribing him blood-pressure medication. Harper saw Dr. Jeter four times from 1995 until 1998. During that time, Harper would intermittently take his blood-pressure medication, which resulted in his blood pressure ranging from normal to elevated.
>
> On August 3, 2000, Harper was rushed to the emergency room at St. Dominic Hospital. Dr. Jeter examined Harper, noted that he had not been taking his blood-pressure medication, and concluded that he had suffered a stroke. Dr. Jeter referred Harper to Dr. Salil Tuwari, a neurologist. After a series of tests, it was determined that Harper had suffered multiple small-vessel strokes in the brain.

---

its employee who is the owner of fifteen percent (15%) or more of its stock in a corporation, if such sole proprietor, partner or employee also voluntarily agrees thereto in writing. Any sole proprietor, partner or employee owning fifteen percent (15%) or more of the stock of his/her corporate employer who becomes exempt from coverage under the Workers' Compensation Law shall be excluded from the total number of workers or operatives toward reaching the mandatory coverage threshold level of five (5).

Miss. Code Ann. § 71-3-5 (Rev. 2011).

After resting for two weeks, Harper returned to work, initially part-time and then to his usual full-time schedule of 8:00 a.m. until 6:30 or 7:30 p.m. However, Harper did not work as many weekends as he did prior to his stroke.

In the early morning of Sunday, July 8, 2001, Harper woke up to go to the restroom. When he returned, Harper's wife, Maggie, asked him a question, and Harper responded with unintelligible noises and became nonresponsive. Harper was taken by ambulance to the University of Mississippi Medical Center, immediately put on life support in the intensive-care unit, and never regained consciousness. On July 10, 2001, Harper was taken off life support and died from the stroke he had suffered two days earlier.

On July 29, 2002, Maggie and her daughter, Andrea Harper, filed two petitions to controvert with the Commission, seeking workers' compensation benefits for Harper's strokes on August 3, 2000, and July 8, 2001. The administrative judge (AJ) found that Harper's strokes were too proximally connected to separate and combined the cases. The AJ held a hearing that began on September 25, 2008, and concluded on November 12, 2008.

The AJ found Maggie and Andrea proved that Harper's work-related stress caused his high blood pressure, which, in turn, caused his stroke on August 3, 2000, and his death on July 10, 2001. The AJ found that Maggie and Andrea proved a compensable workers' compensation claim, and that Banks did not prove Harper had a preexisting condition to warrant denial of the claim or apportionment.

Banks appealed to the Commission, which heard the case on December 7, 2009. The Commission affirmed the AJ's findings with regard to the compensability of the claim. However, the Commission held that Harper had a clearly identifiable preexisting condition that materially contributed to his death, and it apportioned the benefits by sixty-five percent. One commissioner dissented, stating that he would deny the claim because the stroke was not in any way work related.

Banks appealed to the Hinds County Circuit Court. The circuit court agreed that substantial evidence supported the Commission's findings that: (1) Harper's strokes arose out of and in the course of employment; (2) Harper was an officer of a corporation; and (3) Harper's workers' compensation benefits should be apportioned. But the circuit court reversed the Commission's judgment because it found that Harper's decision not to obtain workers' compensation insurance disqualified him from receiving benefits that he would have otherwise been entitled to receive.

*Harper*, 136 So. 3d at 464-65.

¶3. The Court of Appeals affirmed in part and reversed in part the Hinds County Circuit Court's decision. *Id.* at 465-67. The court found that "[a]s president of Banks, Harper was responsible for making decisions regarding insurance" and that "Harper erroneously determined that Banks did not have the requisite number of employees to legally mandate Banks to purchase workers' compensation insurance." *Id.* at 465. Ultimately, based on an error in statutory interpretation, Harper chose not to obtain workers' compensation insurance for Banks. *Id.*

¶4. However, the Court of Appeals held that Harper's decision not to obtain workers' compensation insurance did not preclude his dependents from recovering workers' compensation benefits from Banks. *Id.* at 456. Applying Section 71-3-79 of the Mississippi Code, the court held that "[the statute] clearly states that an 'executive officer may reject [the] coverage by giving notice in writing to the carrier of this election not to be covered as an employee.'" *Harper*, 136 So. 3d at 466 (quoting Miss. Code Ann. § 71-3-79). Thus, because Harper did not reject workers' compensation insurance coverage in writing, the Court of Appeals found that he had not waived coverage by failing to obtain insurance. *Harper*, 136 So. 3d at 466.

¶5. Moreover, the Court of Appeals held that evidence in the record supported the Commission's decision that Harper's strokes and subsequent death were caused by his stress at work. *Id.* at 456-57.

6

¶6.    Banks filed with this Court a Petition for Writ of *Certiorari*.  We granted Banks's petition to review two issues: (1) whether Section 71-3-79 of the Mississippi Code applies to the facts of this case and (2) whether the Workers' Compensation Commission's finding that Harper suffered a compensable injury is supported by substantial evidence.

**DISCUSSION**

**I.    Whether Section 71-3-79 of the Mississippi Code applies to the facts of this case.**

¶7.    In reviewing questions of law, this Court applies a *de novo* standard of review. ***Natchez Equip. Co., Inc. v. Gibbs***, 623 So. 2d 270, 273 (Miss. 1993). When engaging in statutory interpretation, this Court's duty is "to neither broaden nor restrict the legislative act." ***Miss. Dep't of Transp. v. Allred***, 928 So. 2d 152, 156 (Miss. 2006). Additionally, "courts cannot restrict or enlarge the meaning of an unambiguous statute." ***Green v. Cleary Water, Sewer & Fire Dist.***, 910 So. 2d 1022, 1027 (Miss. 2005).

> [When] considering a statute passed by the Legislature, . . . the first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. Whether the statute is ambiguous or not, the ultimate goal of this Court is to discern and give effect to the legislative intent.

***Allred***, 928 So. 2d at 154 (quoting ***City of Natchez v. Sullivan***, 612 So. 2d 1087, 1089 (Miss. 1992) (citations omitted)).

¶8.    Section 71-3-79 of the Mississippi Code, provides:

> *Acceptance of a premium on a policy* securing to an employee compensation, either alone or in connection with other insurance, shall estop the *carrier* so accepting from pleading that the employment of such employee is not covered under this chapter or that the employment is not carried on for pecuniary gain.

7

When any member of a partnership, firm, or association who does or does not perform manual labor, and *where there is coverage of fellow employees*, *elects to take coverage* under the provisions of this chapter, the intent of the insured as well as *acceptance by the carrier* shall be shown by endorsement to the *policy*. Any such affirmative action by the parties shall entitle said members or officers to the *benefits enjoyed by an employee* under this chapter. *Every executive officer* elected or appointed and empowered in accordance with a charter and bylaws of a corporation, other than nonprofit charitable, fraternal, cultural, or religious corporations or associations, *shall be an employee of such corporation under this chapter*, provided that *said executive officer may **reject said coverage** by giving notice in writing to the carrier of this election not to be covered as an employee. . . .*

Miss. Code Ann. § 71-3-79 (Rev. 2011) (emphasis added). Section 71-3-79 is not ambiguous. As such, for this statute to be applicable, there must have been (1) coverage extended by a carrier, (2) which was provided by the employer, and (3) was accepted or denied by employees. In the instant case, none of the prescribed events occurred. There was no policy providing coverage to any Banks employee.

¶9.     The Workers' Compensation Commission found that "[t]here can be no argument, therefore, that Mr. Harper elected not to be covered as an executive officer because there was no policy from which he could have otherwise excluded himself."  However, the Court of Appeals, relying on Section 71-3-79, held that "[a]t no point did Harper reject the coverage by giving notice in writing." **Harper**, 136 So. 3d at 467.  The Court of Appeals' reliance on Section 71-3-79 is misplaced, because workers' compensation insurance coverage for Banks did not exist.

¶10.    Coverage must exist prior to any employee's "reject[ing] said coverage." Miss. Code Ann. § 71-3-79 (Rev. 2011).  During Harper's tenure with the firm, the firm chose not to purchase workers' compensation insurance. Thus, neither Harper nor any eligible employee

of Banks could "reject said coverage" by written notice to a carrier, because there was no carrier to whom Harper or any eligible employee could provide written notice to reject nonexistent coverage.

¶11. The record is clear that Banks had not purchased workers' compensation insurance coverage for any of its employees at the time of Harper's strokes and subsequent death. It also must be determined whether Banks was an employer subject to the Act. Section 71-3-5 of the Mississippi Code provides:

> The following shall constitute employers subject to the provisions of this chapter:
>
> Every person, firm and private corporation, including any public service corporation but excluding, however, all nonprofit charitable, fraternal, cultural, or religious corporations or associations, *that have in service five (5) or more workmen or operatives regularly in the same business* or in or about the same establishment under any contract of hire, express or implied.
> . . .
> Any *employer may elect, by proper and written action of its own governing authority, to be exempt* from the provisions of the Workers' Compensation Law as to its sole proprietor, its partner in a partnership or to its employee who is the owner of fifteen percent (15%) or more of its stock in a corporation, if such sole proprietor, partner or employee also voluntarily agrees thereto in writing. Any sole proprietor, partner or employee owning fifteen percent (15%) or more of the stock of his/her corporate employer who becomes exempt from coverage under the Workers' Compensation Law shall be excluded from the total number of workers or operatives toward reaching the mandatory coverage threshold level of five (5).

Miss. Code Ann. § 71-3-5 (Rev. 2011) (emphasis added).

¶12. The Workers' Compensation Commission found that Banks employed a minimum of five people. The record reflects that Banks Finley employed at least the following people: Milton Harper, Kaiser Brown, David Ewing, Jr., Dian Brown, and Robert Sultan. Because

9

Banks employed five people, it is clear that Banks fell within the provisions of Section 71-3-5 during the time relevant to Harper's claim.

¶13.    Section 71-3-5 provides a method by which an employer can exempt itself from the provisions of workers' compensation law, by excluding certain employees from the total number of workers. Nothing in the record indicates that Banks provided any written notice that it was electing to exempt Harper from coverage, nor did it provide any evidence that Harper agreed with Banks's exemption of Harper from coverage.

¶14.    Chief Justice Waller's dissent, relying upon a case from Maryland based upon that state's workers' compensation statutes, avers that Harper waived workers' compensation coverage by failing to obtain workers' compensation insurance.  Mississippi law mandates that the state's worker's compensation laws apply to "*[e]very person*, firm and private corporation, including any public service corporation . . . that have in service five (5) or more workmen or operatives regularly in the same business."  Miss. Code Ann. § 71-3-5 (Rev. 2011) (emphasis added). Harper unequivocally was covered by Mississippi's workers' compensation laws at the time of his death.

¶15.    Furthermore, our Legislature provided means by which partners such as Harper can waive, through express writing, the applicability of workers' compensation coverage.  *Id.* ("Any employer may elect, by proper and written action of its own governing authority, to be exempt from the provisions of the Workers' Compensation Law . . . ."). A common rule of statutory construction is *expressio unius est exclusio alterius*, which translates as "expression of the one is exclusion of the other." *See **McCoy v. McRae***, 204 Miss. 309, 317

10

(Miss. 1948). This Court has explained this venerable principle: "where a statute enumerates and specifies the subject or things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause." *Southwest Drug Co. v. Howard Bros. Pharmacy of Jackson, Inc.*, 320 So. 2d 776, 779 (Miss. 1975) (citing *Akers v. Estate of Johnson*, 236 So. 2d 437 (Miss.1970)). Thus, by providing a specific mechanism through which partners can waive the applicability of Mississippi's workers' compensation laws, the Legislature has foreclosed all other forms of waiver, including waiver through inaction. The Waller dissent seeks to superimpose onto Mississippi's workers' compensation statutes a provision for waiver through inaction, even though this has not been included in the applicable statutory framework.

¶16. Ultimately, nothing in the record supports the conclusion that the accounting firm was exempt from the Act and did not owe benefits to the dependents of one of its partners.

II. **Whether the Workers' Compensation Commission's finding that Harper suffered a compensable injury is supported by substantial evidence.**

¶17. The standard of review utilized by this Court when considering an appeal of a decision of the Workers' Compensation Commission is well settled: "[t]he findings and order of the Workers' Compensation Commission are binding on this Court so long as they are 'supported by substantial evidence.'" *Vance v. Twin River Homes, Inc*., 641 So. 2d 1176, 1180 (Miss. 1994) (quoting *Fought v. Stuart C. Irby Co.*, 523 So. 2d 314, 317 (Miss. 1988)). Substantial evidence requires more than a "mere scintilla" of evidence, *Johnson v. Ferguson*, 435 So. 2d 1191, 1195 (Miss. 1983), but it does not rise to the level of "a preponderance of the

evidence." ***Babcock & Wilcox Co. v. McClain***, 149 So. 2d 523, 523-24 (Miss. 1963); *accord*

***Delta CMI v. Speck***, 586 So. 2d 768, 773 (Miss. 1991).

¶18.    We are bound to the Workers' Compensation Commission's findings of fact even though the evidence would convince us otherwise if we were the ultimate fact finder. ***Barnes v. Jones Lumber Co.***, 637 So. 2d 867, 869 (Miss. 1994). "This Court will overturn a [C]ommission decision only for an error of law or an unsupportable finding of fact." ***Georgia Pacific Corp. v. Taplin***, 586 So. 2d 823, 826 (Miss. 1991) (citations omitted); *see also* ***Hedge v. Leggett & Platt, Inc.***, 641 So. 2d 9, 12 (Miss. 1994). This Court therefore cannot overturn a Commission decision unless it finds that the decision was "arbitrary and capricious." ***Taplin***, 586 So. 2d at 826.  Moreover, even "[d]oubtful cases should be resolved in favor of compensation, so as to fulfill the beneficial purposes" of statutory law.  ***Miller Transporters, Inc. v. Guthrie***, 554 So. 2d 917, 918 (Miss. 1989).

¶19.    In workers' compensation cases, the claimant bears the burden of proving by a "fair preponderance of the evidence" the following elements: (1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability. ***Hedge***, 641 So. 2d at 13. Thus, we must review the record for the purpose of deciding whether there is evidence supporting the Commission's decision. We are not to engage in a *de novo* balancing of the evidence, as the Coleman dissent encourages us to do here.  *See* ***R.C. Petroleum, Inc. v. Hernandez***, 555 So. 2d 1017, 1021 (Miss. 1990).  Significantly, the administrative law judge, the Workers' Compensation Commission, the Hinds County Circuit Court, and the Mississippi Court of Appeals have

12

reviewed the record and have decided that there is substantial evidence in the record supporting Harper's claim. Furthermore, the Coleman dissent omits and therefore fails to consider the bulk of the evidence supporting the Commission's decision.

¶20. Dr. Tiwari, an expert for Harper's beneficiaries and a physician who treated Milton Harper on August 3, 2000, after Harper's first stroke, testified that Harper did not have any of the habits or conditions that are likely causes of strokes, including "elevated cholesterol, smoking, obesity, sedentary lifestyle, and high blood pressure." He averred that "he did have high blood pressure, but it wasn't terribly high." He also treated Harper on January 30, 2001, after Harper had complained of uncontrollable laughter, an unusual stroke symptom. Of that visit, Dr. Tiwari opined that, of potential causes for strokes, "we didn't identify anything other than high blood pressure . . . . The diastolic was a hundred, and many times you can find normal people that go visit a doctor with a bottom number being about a hundred, partly because they're stressed."

¶21. Dr. Jeter, an expert for Harper's beneficiaries and Harper's primary care physician who treated his high blood pressure, testified that Harper had "labile hypertension," or blood pressure constantly in flux due to his environment. This doctor reported that Harper's blood pressure would fluctuate . . . from a normal range to be elevated." Dr. Jeter stated that the blood pressure of a person with labile hypertension will change "when they get uptight . . . ." He further testified that there were no obvious contributing causes to Harper's strokes other than high blood pressure.

¶22. Dr. Jeter also testified that Harper's personality as a "workaholic" was to blame for the fluctuations of his blood pressure, adding that "[t]he Type A personality . . . puts themselves under a lot of stress because they have to get everything done." He said that his impression of Harper was that he was a "workaholic" and that he was "continually push, push, push[ing]." Dr. Jeter said that this was "probably contributing to his blood pressure . . . being elevated."

¶23. Dr. Jeter discussed at length the interrelationship among vascular disease, hypertension, and stress. This physician stated that "stress can be an aggravated factor. . . . [V]ascular changes and stress cause[] increased [blood] pressure, and that can affect the vascular system." He characterized stress as a "contributing factor" to Harper's death.

¶24. Dr. Davis, a neurosurgeon who did not treat Harper, testified on behalf of the accounting firm, opining that Harper's strokes were caused by his high blood pressure.

¶25. This medical testimony leads to several conclusions. First, Milton Harper had labile hypertension, a condition in which stress causes a person's blood pressure to rise due to stress. Second, other than high blood pressure, there were no medical causes of Milton Harper's stroke. Third, Harper died of a stroke. The only component of a viable worker's compensation claim left lacking was a causal connection between the stress causing Harper's hypertension and Harper's work. *See **Hedge***, 641 So. 2d at 13 (requiring proof of an accidental injury arising out of employment and a causal connection between the injury and the death or claimed disability).

¶26. Justice Coleman's dissent relies upon the following testimony of Dr. Jeter:

Q. And you cannot state to a reasonable degree of medical certainty or probability that Mr. Harper's death was caused by his job at any point?

A. As I've stated before, the only thing you can say is that stress has an effect on increasing high blood pressure, and high blood pressure can contribute to a stroke. Now, those are basic facts.

Q. Okay. We are talking specifically here about Mr. Harper. You cannot say to a reasonable degree of medical probability that Mr. Harper's job contributed to or caused his death?

A. No. It's a possibility.

¶27. Apparently in reliance upon this lone reference to the record, Justice Coleman's dissent summarizes Dr. Jeter's testimony thusly: "Dr. Jeter testified that it was *possible* that Harper's uncontrolled blood pressure *could* have caused his fatal stroke. He also testified that stress could have been a factor in Harper's death." Coleman Diss. ¶ 48. This is an inaccurate representation of Dr. Jeter's testimony. He plainly testified that it was a *possibility* that the stress of Harper's *work* contributed to Harper's death. Dr. Jeter did not equivocate about the fact that stress causes hypertension and that Harper had no conditions which typically contribute to strokes other than hypertension. Furthermore, the Coleman dissent ignores the testimony of the other medical experts who testified at the workers' compensation hearing. Strictly speaking, the record does not support Justice Coleman's characterization of the expert testimony in this case.

¶28. The Coleman dissent further posits that there was no reliable evidence of causation in this case. Relying on *Betchel Corporation v. Phillips*, 591 So. 2d 814 (Miss. 1991), the dissent opines that "medical evidence is required to prove causation." Coleman Diss. ¶ 46. First, as discussed previously, there was expert testimony in this case unequivocally linking

Harper's stress to his labile hypertension and to his stroke. The evidence adduced at the hearing proves that the only known cause of Harper's stress was his work for Banks. It is fundamental in our justice system that lay witnesses can testify only with respect to their own experiences and knowledge. *See* M.R.E. 701 (requiring first-hand knowledge for the admissibility of a lay opinion); M.R.E. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."). Nowhere in case law from this Court or in Mississippi statutes can be found the principle espoused by the Coleman dissent that the worker's compensation claim must be built upon the testimony of one expert alone. *But see* **R.C. Petroleum, Inc.**, 555 So. 2d at 1021 ("Circumstantial evidence may be used to establish the elements [of a workers' compensation claim]."); **L.B. Priester & Son, Inc. v. Bynum's Dependents**, 247 Miss. 664, 157 So. 2d 399 (1963) (same). Moreover, this evidentiary standard advocated by the Coleman dissent, if adopted widely throughout our jurisprudence, would be unworkable and unrealistic. For example, what murder conviction could stand in the light of this standard? A forensic pathologist can testify that a decedent's cause of death was a shotgun wound to the head. That doctor usually cannot, however, testify about the shooter's identity, because that information is outside his knowledge and expertise. The same is true here. Given that physicians have established that Harper's high blood pressure was caused by stress and that his fatal stroke was caused by high blood pressure, we must look to first-hand witnesses about the causes of Harper's stress, not entirely to the testimony of physicians. *See* M.R.E. 701; **R.C. Petroleum, Inc.**, 555 So. 2d at1021.

16

¶29.    Milton Harper's widow, Maggie Harper, testified that Harper was a "workaholic" and that he was "constantly working." She also stated that Harper kept saying that he was getting behind at work and having problems balancing being out of town for audits and trying to manage the office at the same time. Maggie said that her husband was the type of person who liked to perform well and who pushed himself at work to receive bonuses. Over the years, Harper's work stress began to take a toll on him. When his wife would advise him to cut back, he would respond that he had "to go make a dollar." She also testified that he told her that his stress had nothing to do with her or with their family life.

¶30.    Harper's coworker Kaiser Brown testified that Harper took responsibility for most of the firm's largest and most complicated engagements. He averred that Harper worked from 8:00 a.m. until 6:30 or 7:00 p.m. on week nights and usually worked some on the weekend. Kaiser also testified that, around the time of his death, Harper had been having issues with another partner at Banks about profit sharing and that several heated disagreements between them had occurred.

¶31.    Dian Parkinson, another coworker of Harper's at the firm, confirmed that Harper would work from about 8 a.m. until 7 p.m. and stated that Harper had more responsibilities than anyone else at Banks because he was the president. She also testified that the firm had started using a new software program in September 2000 and that Harper had been having a difficult time learning to use the new software.

¶32.    In fact, there is no evidence in the record that Harper's stress was caused by anything other than his professional life.

17

¶33. This is consistent with the findings of the administrative law judge, which were affirmed on appeal by the Workers' Compensation Commission:

> The dependents of Harper have proven that Harper's hypertension was caused by the stresses of work and that such hypertension caused Harper's stroke on August 3, 2000, and his death on July 10, 2001. . . . The credible evidence showed that Harper was under a considerable amount of stress from work which was more than the usual and everyday work stress, including but not limited to, (1) working long hours and working seven days a week; (2) having partners feuding over profit sharing; (3) having problems with a new computer software program shortly after his August 3, 2000 stroke; and (4) managing the office simultaneously while performing out-of-town audits and other accounting work. The evidence as a whole leads to the conclusion that the stress was such that it caused an increase in Harper's blood pressure, which in turn caused the August 3, 2000 stroke and his death on July 10. 2001.

¶34. Harper's dependents proved that the only source of his stress was his work, that stress was the cause of his high blood pressure, and that high blood pressure caused his stroke. As such, "substantial evidence" in the record clearly supports the Commission's decision, which was affirmed on this basis by the Hinds County Circuit Court and the Court of Appeals. This is especially true in light of the fact that we are to be deferential to the Workers' Compensation Commission's role as the ultimate fact finder in workers' compensation cases. ***Barnes v. Jones Lumber Co.***, 637 So. 2d 867, 869 (Miss. 1994).

## CONCLUSION

¶35. Section 71-3-79 does not apply to the facts as presented. Because Banks had not obtained workers' compensation insurance coverage, no employee, including Harper, had rejected workers' compensation insurance coverage in writing. Banks, an accounting firm with at least five employees, was subject to the provisions of the Workers' Compensation Act. Banks therefore is obligated to compensate Harper's dependents, regardless of the

18

reason the firm had not obtained workers' compensation insurance coverage. Moreover, substantial evidence in the record supports the Workers' Compensation Commission's finding that Harper suffered a compensable injury. We therefore affirm in whole the decision of the Workers' Compensation Commission, which held that Harper's fatal stroke was a compensable injury and that Banks was obligated to provide workers' compensation benefits to Harper's beneficiaries, regardless of whether Harper had erred in failing to procure workers' compensation insurance for Banks. We affirm the Hinds County Circuit Court's holding that there was substantial evidence in the record supporting the Workers' Compensation Commission's finding that Harper had suffered a compensable injury, but we reverse and render its holding that Harper had waived workers' compensation benefits by failing to obtain workers' compensation insurance for the Banks firm. Finally, we affirm the Court of Appeals' holding that there was substantial evidence in the record supporting the Workers' Compensation Commission's finding that Harper's stroke was a compensable injury within the course and scope of his employment at Banks. But we hold that the Court of Appeals erred by applying Section 71-3-79 of the Mississippi Code to this case, because, under that statute, an entity first must have obtained workers' compensation insurance in order for a partner to opt out in writing.

¶36. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED IN PART, REVERSED IN PART, AND RENDERED IN PART. THE JUDGMENT OF THE WORKERS' COMPENSATION COMMISSION IS AFFIRMED.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR AND KING, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY**

19

**CHANDLER, PIERCE AND COLEMAN, JJ. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND CHANDLER, J.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶37.    Milton Harper, as president of Banks, Finley, White, & Co., P.C., was responsible for ensuring the firm secured workers' compensation insurance. *See* Miss. Code Ann. § 71-3-83 (Rev. 2011). The firm, however, failed to do so. Harper, according to the vice president of Banks at the time, made the decision not to obtain workers' compensation coverage. The vice president and Harper discussed the matter, but, according to the vice president, Harper ultimately made the decision not to obtain coverage. Moreover, as president of the corporation, Harper had a statutory duty to ensure the firm carried workers' compensation coverage. *See* Miss. Code Ann. § 71-3-83 (Rev. 2011) (making president of corporation criminally liable for failure to secure compensation).

¶38.    Harper's beneficiaries now seek the very workers' compensation benefits Harper failed to procure. Because I agree with the circuit court that Harper's beneficiaries are barred from recovering workers' compensation benefits in this case, I respectfully dissent.

¶39.    Banks employed more than five individuals and was subject to Mississippi's workers' compensation statutes. *See* Miss. Code Ann. § 71-3-5 (Rev. 2011). Banks, however, failed to secure workers' compensation insurance while Harper was managing partner and president, and there was no such coverage at the time of his injuries. The majority finds that Harper's beneficiaries are entitled to compensation "regardless of the reason the firm had not obtained workers' compensation insurance coverage." In other words, Harper, in the form

20

of his beneficiaries, is not barred from recovering benefits despite Harper's own failure to secure workers's compensation insurance. I disagree.

¶40.    While there are no Mississippi cases on point, the Maryland Court of Appeals considered a similar issue in a workers' compensation case much like today's. There, a corporate officer was injured while at work. ***Uninsured Employers' Fund v. Lutter***, 342 Md. 334, 337, 676 A.2d 51, 52 (1996). The corporation, which he controlled, failed to obtain workers' compensation insurance or opt out of workers' compensation coverage in writing as required by Maryland law. ***Lutter***, 676 A.2d at 53, 54. Nevertheless, the officer sought workers' compensation benefit's from the corporation. ***Id.***

¶41.    The officer argued "that despite his decision not to purchase insurance for himself, he did not effectively exempt himself from coverage under the Act because he did not file written notice of his election to be exempt . . . ." ***Id.*** at 54. The Maryland court disagreed. ***Id.*** The court first noted that there was no coverage for the officer to opt out of, so the Maryland statute allowing officers to exempt themselves from coverage was inapplicable. ***Id.*** at 54-55.

¶42.    The court then found that, by deciding to forego workers' compensation insurance, the officer had waived his right to collect benefits under Maryland's workers' compensation scheme. ***Id.*** at 55. The court provided, "As corporate president, [the officer] was . . . the person who made the decision not to protect himself . . . ." ***Id.*** Therefore, "he cannot be permitted to receive benefits from the [Uninsured Employers'] Fund merely because he neglected or refused to perform his duty . . . ."[3] ***Id.*** Moreover, the court continued, an officer

---

[3] Lutter sought compensation from his corporation, but because the corporation lacked workers' compensation insurance coverage, any benefits he would have recovered

of a corporation who fails to obtain workers' compensation coverage may be held criminally liable, and "Allowing him to collect workers' compensation benefits . . . would violate the common law principle that one should not be permitted to benefit from his own criminal conduct." *Id.* at 56.

¶43.    I find this rationale persuasive and would apply the same reasoning here.[4] Harper had a duty as a corporate officer to secure workers' compensation insurance coverage. Miss. Code Ann. § 71-3-83 (Rev. 2011).  He failed to do so. In fact, Harper could have been held criminally and civilly liable for failing to procure workers' compensation coverage. *Id.* ("If the employer is a corporation, the president . . . thereof shall be also severally liable to such fine or imprisonment as herein provided for the failure of such corporation to secure the payment of compensation . . . ."). And, like Maryland, Mississippi has long recognized the common-law principle that "a party shall not derive any benefit in [a] court from his own wrong." *Buckner v. Calcote*, 28 Miss. 432, 571 (Miss. Err. & App. 1855); *see also* *Collins v. Collins*, 625 So. 2d 786, 789 (Miss. 1993). In short, to paraphrase the Maryland court, Harper was required to discharge the responsibilities of his position or suffer the consequences. *See Lutter*, 676 A.2d at 56.

_____

would have been paid by the state's Uninsured Employers' Fund. *Lutter*, 676 A.2d at 53.

[4] The *Lutter* case also turned on Maryland's notice of exemption statute that allows an employer to exempt certain officers from the workers' compensation statutes, and the court noted it limited its holding to the facts of the case. The issues raised there regarding that notice and the state's Uninsured Employers' Fund are inapplicable to the present case. The import of the case, however, is clear and persuasive – a corporate officer cannot fail to execute his duty and then later seek benefits despite this failure.

22

¶44. Accordingly, I would affirm the findings of the Circuit Court of the First Judicial District of Hinds County that Harper, through his dependents, was barred from recovering benefits from Banks because of Harper's failure to obtain workers' compensation insurance.

**CHANDLER, PIERCE AND COLEMAN, JJ., JOIN THIS OPINION.**

**COLEMAN, JUSTICE, DISSENTING:**

¶45. I join Chief Justice Waller's dissent. I write separately because, regardless of coverage issues, no competent evidence exists anywhere in the record upon which any tribunal could rely to reach a valid finding that Harper's stroke resulted from his work. Therefore, the Workers' Compensation Commission award was not supported by substantial evidence.

¶46. In workers' compensation cases, we limit our review to determining whether the Commission's decision "was supported by substantial evidence, was arbitrary and/or capricious, was beyond the Commission's authority to make, or whether a claimant's constitutional or statutory rights were violated." *Ladner v. Zachry Constr.*, 130 So. 3d 1085, 1088 (Miss. 2014). Harper's dependents bore the burden of proving a causal connection between his stroke and his work. *Bracey v. Packard Elec. Div., Gen. Motors Co.*, 476 So. 2d 28, 29 (Miss.1985). *See also* Miss. Code Ann. §§ 71-3-3 and -7 (Rev. 2011); V. Dunn, *Mississippi Workers' Compensation* § 265 (3d ed. 1982); *Strickland v. M.H. McMath Gin, Inc.*, 457 So. 2d 925, 928 (Miss. 1984).

> A claimant's proof on the issue of causal connection must rise above mere speculation or possibility, as "where the medical testimony is that it could have been one way just as well as the other." Dunn, *Mississippi Workmen's Compensation* § 273 (2d ed. 1978) (footnote omitted). *See also Southern*

23

*Brick & Tile v. Clark*, 247 So. 2d 692 (Miss. 1971). Likewise, once the burden of proof shifts to the employer, the same degree of proof is required in order to rebut the claimant's prima facie case. It is not enough to merely state that causation is possible but that there is insufficient evidence available upon which a medical conclusion could be based.

*Hedge v. Leggett & Platt, Inc.*, 641 So. 2d 9, 15 (Miss. 1994). Although Rule 2.8 of the Rules of the Workers' Compensation Commission states that, for Commission purposes, the general rules of evidence are relaxed, evidence still must be "competent" to be considered. Expert medical evidence is required to prove causation. *Bechtel Corp. v. Phillips*, 591 So. 2d 814, 817 (Miss. 1991).

¶47.   In *Sonford Products Corp. v. Freels*, 495 So. 2d 468 (Miss. 1986), *overruled on other grounds by Bickham v. Department of Mental Health*, 592 So. 2d 96 (Miss. 1991), the issue was whether the workers' compensation claimant's exposure to toxic chemicals caused his lung cancer and subsequent death. *Freels*, 495 So. 2d at 471. The *Freels* Court wrote, "In all cases in which the causal connection would not be obvious to the untrained layman, the claimant must prove the causal connection between the alleged injury and the alleged disability by competent medical proof." *Id.* In holding that Dr. Anthony J. Verlangieri, a toxicologist, was competent to give expert causation testimony, the *Freels* Court cited and relied upon Prosser, *Law of Torts* § 41(4th ed.1971), for the following proposition:

> Causation is a fact. It is a matter of what has in fact occurred. A cause is a necessary antecedent: in a very real and practical sense, the term embraces all things which have so far contributed to the result that without them it would not have occurred.
> . . .
> The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the [exposure to the chemical] was a substantial factor in bringing about the result. . . . Where the conclusion

24

is not one within the common knowledge of laymen, expert testimony may provide a sufficient basis for it.

*Freels*, 495 So. 2d at 472-473. The factors that cause a stroke cannot be considered to be within the common knowledge of a layman. While the Rules of Evidence may be relaxed for purposes of workers' compensation hearings, proof still must be competent. As the *Freels* Court wrote, competent expert medical testimony must be provided to prove causation, and competent expert medical testimony is that which "affords a reasonable basis for the conclusion that it is more likely than not" that the claimant's work "was a substantial factor in bringing about the result." *Id.*

¶48. In short, the evidence before the Commission is devoid of any expert testimony that affords the necessary reasonable basis for the Commission to have concluded "that it is more likely than not" that Harper's work caused his stroke and death. During the hearing before the administrative judge, Dr. Marvin Jeter, Harper's treating physician, testified that he first began treating Harper in January 1995 for hypertension. Dr. Jeter treated Harper's hypertension with medication, and Harper responded favorably. Dr. Jeter considered his hypertension to be well-controlled when he took the medication as prescribed. However, Harper often was noncompliant. When Harper asked what he could do in lieu of taking medication, Dr. Jeter informed him that changes in his diet and exercise regime also could aid in controlling his hypertension. At no time did Dr. Jeter encourage Harper to alter his job duties. He did testify that Harper reported that he was under stress at his job. Dr. Jeter testified that stress does tend to increase a person's blood pressure. Dr. Jeter admitted that he was not aware of what Harper's blood pressure was at the time of his death because he

25

last saw Harper in 2000 after his first stroke. Dr. Jeter testified that it was *possible* that Harper's uncontrolled blood pressure *could* have caused his fatal stroke. He also testified that stress could have been a factor in Harper's death.

¶49.   On cross-examination, Dr. Jeter testified that he could not state to a reasonable degree of medical probability that Harper was under stress due to his job or that Harper's death was caused by his job.

> Q. But, in fact, you cannot state to a reasonable degree of medical probability that Milton Harper was under stress due to his job on July 8th, 2001, can you?
>
> A. Not on July the 8th, 2001.
>
> Q. And –
>
> A. Because he –
>
> Q. And you cannot state to a reasonable degree of medical certainty or probability that Mr. Harper's death was caused by his job at any point?
>
> A. As I've stated before, the only thing you can say is that stress has an effect on increasing high blood pressure, and high blood pressure can contribute to a stroke. Now, those are basic facts.
>
> Q. Okay. We are talking specifically here about Mr. Harper. You cannot say to a reasonable degree of medical probability that Mr. Harper's job contributed to or caused his death?
>
> A. No. It's a possibility.
>
> Q. In fact, you have used that term a lot, it is just a possibility. That is all you can testify about?
>
> A. Sure.

The Harpers offered no other testimony to establish that Harper's death was a result of his employment. With all respect to the majority, speculative testimony such as exists in the instant case does not amount to an unequivocal causal linking, (Maj. Op. at ¶ 27), and while the majority makes a nonspecific reference to other expert testimony, it identifies none that meets the requisite standard for competence set out above. Because the Harpers' evidence falls well short of the level of competent, they fail to establish a *prima facie* showing of causation. No reasonable basis exists for the Commission's award. Accordingly, I respectfully dissent.

**WALLER, C.J., AND CHANDLER, J., JOIN THIS OPINION.**